WESTLAKE & BUTTON (*a corporation*), *Appellant*, v. THE CITY OF ST. LOUIS.

1. **Payment of Water License under Compulsion.** Payment of a water license under threat of turning off the water in case of continued refusal, is payment under compulsion, and if the charge is excessive, the excess may be recovered; and that without tendering the amount really due.

2. ————: TENDER. Tender of the true amount due for a license is not essential to authorize recovery of the excess paid where it is apparent from the language used, that the tender would not be accepted.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

This action was brought by Westlake & Button, a corporation, to recover of the city of St. Louis the sum of $1,756.49, the aggregate of overcharges made by the city, as the plaintiff alleged, on water licenses issued to plaintiff. At the trial the plaintiff gave evidence tending to show that in September, 1862, the license for plaintiff's foundry was fixed at $115 per half year; that prior to that time it had been $42; that the new rate was illegal and excessive; that plaintiff objected to it on that ground; that the assessor and collector of water rates refused to make any reduction and threatened to turn off the water from plaintiff's foundry at once if payment was not made; that payment was made to prevent this threat being carried into execution; that like objection was made by plaintiff at each renewal of the license; that in 1873 application was made to the board of water commissioners for a reduction, but they refused relief; that plaintiff, thereupon, refused to pay the overcharge and the board sent down a man to turn off the water from plaintiff's premises; that when he came, in order to prevent the water from being turned off, plaintiff paid the license; that plaintiff's foundry was entirely dependent for its supply of water on the city waterworks,

and that if the water had been turned off plaintiff would have been compelled to close their foundry and thus have suffered a heavy loss. It further appeared that the water never was, in point of fact, turned off; that none of plaint-iff's property was ever seized, and none of plaintiff's officers or employes were ever arrested, nor was any threat of seizure or arrest ever made; that no written protest was ever filed by plaintiff; and that after 1873 the license was reduced to the original rate. This was the substance of the plaintiff's evidence. At its conclusion the court, at the request of the defendant, gave an instruction that the plaintiff could not recover. There was judgment for the defendant, which judgment was affirmed by the St. Louis court of appeals, and plaintiff then appealed to this court.

*E. McGinnis* for plaintiff in error.

In the cases where the law requires a protest at the time of payment to be made, as a condition to the recovery of money not legally due but paid under compulsion, such protest is not required to be in writing unless so prescribed by statute, nor need it be formal. *Swartwout v. Gihon,* 3 How. 110; *Erskine v. Van Arsdale,* 15 Wall. 75. If money is paid under such circumstances to a party for his own use, no protest is necessary in order to lay the foundation of an action for its recovery—protest is necessary only when the action is against an agent who must account to his principal for the money collected. *Meek v. McClure,* 49 Cal. 624; *Swartwout v. Gihon,* 3 How. 110; *Boston Glass Co. v. Boston,* 4 Met. 181; Burroughs on Taxation, p. 266; 18 Alb. L. J. 76. If a party is required by law to take out a license before doing certain acts, or to suffer a penalty or fine for doing such acts without first having procured a license, and is required to pay an illegal and excessive price in order to obtain such license, the payment of such excess is compulsory and may be recovered back. *Morgan v. Palmer,* 2 Barn. &. Cress. 319; *City of Marshal v. Snediker,* 25 Texas

460; *County of La Salle v. Simmons,* 10 Ill. 513; *Baker v. Cincinnati,* 11 Ohio St. 534. When a party is compelled to pay an illegal demand to one armed with apparent authority to enter upon his premises and seize upon his property, without first resorting to an action at law, and the payment is made to prevent the threatened exercise of the authority, such payment is involuntary. Burroughs on Taxation, p. 266; *Wolfe v. Marshal,* 52 Mo. 167; *Preston v. Boston,* 12 Pick. 7; *Allen v. Burlington,* 45 Vt. 202; *Hendy v. Soule* 1 Deady 400: *Claflin v. McDonough.* 33 Mo. 412.

*Leverett Bell* for defendant in error.

Westlake & Button availed themselves of the water supply of the city. They claimed that they were overcharged for the use thereof. They conceded, however, that they were required by law to pay some amount into the city treasury therefor. They never tendered the amount admitted by them to be due. They protested against paying the sum charged, but did not offer to pay any specific sum. They assumed the position that the city by charging in excess of the rate fixed by law, was required to supply them with water free of charge, or without any payment first made by them. This, the city officials declined to do, and threatened to cut off the supply of water if payment was not made. And payment being made under these circumstances, no recovery thereof can be had. They were not imprisoned; they were not subjected to duress; their property was not seized; they were not coerced. They were informed that they could not be permitted to use the water without payment, and a failure to pay would be followed by severing the water from their premises. This course the city was empowered to pursue, unless some duty rested on it, to furnish them with water without compensation. *Walker v. St. Louis,* 15 Mo. 563; *Christy v. St. Louis,* 20 Mo. 143; *Claflin v. McDonough,* 33 Mo. 412.

4—77

SHERWOOD, J.—The instruction in the nature of a demurrer to the evidence should not have been given. The money sought to be recovered was not voluntarily paid. None of the three cases cited by the defendant are analogous to the present one. Two of them follow in the wake of, and were similar in their essential facts to that of *Walker v. City of St. Louis*, 15 Mo. 563. There the party who afterward complained, made no objection; paid the taxes; saw them applied to the improvement and enhancement of the value of the property on which they were levied, and years afterward, for the first time, is the complaint made. Of course this was a mere voluntary payment, and no right to recover any excess existed. But no such case is presented by the present record. Here the parties who paid, objected and protested from the first. They vainly called the attention of the officers appointed to assess and collect the amount of the water license, to the fact that such amount was in excess of that allowed by the ordinance; they in vain appealed to the board of water commissioners. The only answer returned in each instance was, "pay, or we will turn off the water." It is easy to see that in such circumstances the payments were not made voluntarily. They were made under what has been aptly termed "moral duress;" the parties paying the excessive amount, and those receiving it, were not on equal terms. The city officials possessed the power, and they threatened to exercise it, of cutting off the water supply of Westlake & Button, unless the illegal demands already mentioned, met with immediate compliance. If this conditional threat had been carried into execution, the foundry of the applicants for license would have been forthwith closed, and from sixty to one hundred hands thrown out of employment. The payment of the excess was, therefore, as much under compulsion, as if the city officials had been armed with a warrant for the arrest of the person or the seizure of goods, in

which case, but one opinion would be entertained as to the nature of the payment if made.

The case of *Maguire v. The State Savings Association*, 62 Mo. 344, closely resembles, in its salient characteristics, and is decisive of this one. There the collector demanded interest on a personal property tax, an illegal demand, and this demand was coupled with another demand for the personal property tax itself, which was in all respects legal. The Savings Association objected to the payment of the excess, applied in vain to the county court for an abatement of the interest, and then paid the whole sum, and we held, in an action for money had and received, the excess could be recovered, because "the money was unwillingly and compulsively paid; paid to one seemingly clothed with power to seize and sell goods, etc., for the payment of the illegal demand, and paid under fear that such unjust demand would be enforced." If the fear of the seizure of goods in the one case would make the payment of the excess, when made under objection, an involuntary one, certainly a payment made to prevent immediate and incalculable injury to one's business or property, can be regarded in no other light.

And it is idle to say that a tender should have been made of the exact amount due. No such tender was made or deemed necessary in *Maguire's case, supra,* and besides, a tender of a smaller sum than that demanded, is never necessary where it is apparent from the language used, as in this case, that such tender would be a mere nugatory act, and be met with prompt and peremptory refusal to receive the amount if tendered. *Hoyt v. Sprague,* 61 Barb. 497; *Holmes v. Holmes,* 12 Barb. 137; *Deichman v. Deichmann,* 49 Mo. 107

Therefore judgment reversed and cause remanded.