# AMERICAN BREWING COMPANY, Appellant, v. CITY OF ST. LOUIS.

### Division One, March 15, 1905.

1. **PAYMENTS: Voluntary: Water Tax: Mistake.** Payments made with full knowledge of all the facts constitute voluntary payments and cannot be recovered, and this rule applies to all kinds of payments, including taxes, licenses, water rates and claims. A mistake or ignorance of the law gives no right to recover; the mistake must be ignorance of the facts.

2. ——: ——: **Compulsion: Water Rate.** The petition charged that the plaintiff operated a brewery and was wholly dependent upon the city water-works for its supply of water, and pleaded an ordinance that the license shall be for six months and shall be paid in advance, and that the assessor of the water rate demanded and exacted from plaintiff the payment of a rate of a cent and a quarter per hundred gallons when it was entitled to only one cent per hundred gallons, and that the assessor required plaintiff to pay the excessive rate for six months in advance. *Held*, that while the petition does not allege that plaintiff was confronted with the alternative of paying the excessive rate or of closing its brewery, it follows, as a necessary and logical sequence from the allegation that it was "wholly dependent upon the city for its water supply," that it could not continue to carry on the business of manufacturing beer and was compelled to pay the excess or close its business, and hence the payments were not voluntary, and the petition stated a cause of action for the recovery of the excessive payments.

3. **PLEADING: Demurrer: Sufficiency.** When a petition is attacked by a general demurrer, all the facts well pleaded and all the inferences of fact that may be fairly and reasonably drawn from the facts pleaded, must be taken as true. If facts essential to a recovery are pleaded, however inartificially or defectively, a general demurrer thereto will not lie.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

REVERSED AND REMANDED.

*Reynolds, Koehler, Reiss & Harlan* and *Franklin Miller* for appellant.

(1) The charge exacted by the respondent city, and paid by appellant, for the use of all water at the meter rates, is a matter of contract between the parties, and not of taxation or license. Brewing Assn. v. St. Louis, 140 Mo. 428; Wagoner v. Rock Island, 146 Ill. 152; Savings Inst. v. Jersey City, 113 U. S. 514; Vreeland, v. O'Neil, 36 N. J. Eq. 402; Vreeland v. Jersey City, 37 N. J. Eq. 576; Appeal of Brumm, 12 Atl. 856; Savings Society v. Philadelphia, 31 Pa. St. 183; Preston v. Water Comrs., 117 Mich. 589; Bailey v. Mayor, etc., of New York, 3 Hill 539; Asher v. W. L. & P. Co., 61 L. R. A. 52, and exhaustive note at pp. 111, 114, 116; 1 Dill. Mun. Corp., secs. 27, 66. (2) The terms of this contract are the terms of the ordinance provision fixing the meter rates, and the contract is formed when the offer or proposal of respondent, made by its promulgation of the ordinance, is accepted by the appellant's election to take and pay for the water under the ordinance and its compliance with the conditions imposed thereby. Lancaster v. Elliott, 28 Mo. App. 92; 7 Am. & Eng. Ency. of Law, 125. (3) Therefore, the contract so formed being executed by appellant's payment at the contract rate for water furnished by respondent, the amount of appellant's payment in excess of such rate is without consideration, and may be recovered by it upon respondent's implied promise to repay the same, as money had and received for appellant's use. Argenti v. San Francisco, 16 Cal. 255; Kelly v. Solari, 9 M. & W. 54; Dowell v. Portland, 13 Ore. 245; Callaway v. Milledgeville, 48 Ga. 309; M. E. Church v. Mayor, etc., of Vicksburg, 50 Miss. 601; Stempel v. Thomas, 89 Ill. 147; Cook v. Railroad, 81 Iowa 551; Rogers v. Weaver, 5 Ohio 536; McDonald v. Lynch, 59 Mo. 350; Davis v. Krum, 12 Mo. App. 279; Chace v. Willman

Merc. Co., 63 Mo. App. 486; Keener on Quasi-Contracts, pp. 26-40; 1 Dill. on Mun. Corp. p. 536; 15 Am. & Eng. Ency. of Law, p. 1103; 20 Am. & Eng. Ency. of Law, p. 1158. (4) And this is true when the overcharge was paid voluntarily and without protest, provided it was paid under mistake as to a material fact. Chatfield v. Paxton, 2 East 471; Windbiel v. Carroll, 16 Hun 101; Cook v. Railroad, 81 Iowa 564; Keener on Quasi-Contracts, pp. 26, 27; 15 Am. & Eng. Ency of Law, p. 1103.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent.

The petition states no cause of action. It shows on its face that the payments made by plaintiff for the use of water were entirely voluntary. There are no facts alleged showing any authority or threat on the part of defendant or its agents to turn off the water in case of non-payment (which was the determining factor in the cases of Brewing Association v. St. Louis, 140 Mo. 419, and Westlake v. St. Louis, 77 Mo. 47), nor is duress of any kind claimed. Neither are there any facts alleged showing that the payments were made under protest or objection of any kind or claim of illegality. The petition is destitute of every allegation that the payments were made under any mistake of fact, or from which such mistake could fairly be inferred. There is no hint of fraud. It is not pretended that defendant acted in bad faith or wantonly exacted money to which it had no color of right. Plaintiff does not claim that he paid in ignorance either of the rate fixed by ordinance for the use of water, or of the amount of water consumed. On the contrary, it affirmatively appears from the petition that the plaintiff applied for the use of the city water and voluntarily paid the price charged, assenting to its correctness and satisfied therewith, being in full possession of all the facts. Now,

after having used the water and paid for it, simply on the supposition, afterwards entertained, that the water could have been gotten for less money, plaintiff thinks to recover the difference. Under such circumstances there can be no recovery. Douglas v. Kansas City, 147 Mo. 440; Couch v. Kansas City, 127 Mo. 438; Brands v. City of Louisville (Ky.), 63 S. W. 2; Claflin v. McDonough, 33 Mo. 415; Walker v. St. Louis, 15 Mo. 575; Christy v. St. Louis, 20 Mo. 143; State ex rel. v. Stonestreet, 92 Mo. App. 220; Teasdale v. Stoller, 133 Mo. 651; U. S. v. Wilson, 168 U. S. 276; 22 Am. & Eng. Ency. Law (2 Ed.), under "Payment," p. 609, referring to a multitude of cases.

MARSHALL, J.—This is an action to recover nineteen hundred and seventy-five dollars, paid by the plaintiff to the defendant, for water furnished by the defendant to the plaintiff between the first of September, 1897, and the first of March, 1899, and used by the plaintiff in its business of manufacturing beer at its plant, located wholly in city block 851, in the city of St. Louis, and being one-quarter of one cent per hundred gallons, which it it alleged was that much in excess of the rate prescribed, for such purposes, by the city ordinance.

The trial court sustained a general demurrer to the plaintiff's petition, the plaintiff refused to plead further, and judgment was entered for the defendant. Thereupon, the plaintiff appealed.

The petition is as follows:

"1. Plaintiff states that defendant is, and at all times hereinafter mentioned was, a municipal corporation created, existing and operating under and by virtue of the laws of the State of Missouri.

"2. That the plaintiff is, and at all times hereinafter mentioned was, a manufacturing corporation created, existing and operating under and by virtue of the

laws of the State of Missouri and engaged in the business of manufacturing, brewing and selling beer.

"3.   Plaintiff further states that in and by section 1742, article 3, chapter 46, of the Revised Ordinances of 1892 of the city of St. Louis, it is provided as follows:

" 'All persons requiring the use of water applying for a meter shall have the right to pay for water in proportion to the quantity used, to be determined by a meter; provided, that in all such cases, the water-taker shall pay the cost of the meter and of placing the same.   The assessor and collector of water rates shall have the power to ascertain by meter measurement the quantity of water used for any purpose, and exact pay-ment therefor at meter rates, and in such cases the rates fixed as a license rate shall not apply.   In all cases where the water is to be paid for at meter rates, the persons taking out license shall be charged the following rates on the average quantity of water used during the year, the year to be estimated at three hundred days:   When the quantity used averages one thousand gallons per day or less, three cents per one hundred gallons.   When the quantity used averages from one thousand to twenty-five hundred gallons per day, two and one-half cents per hundred gallons.   When the quantity used averages from twenty-five hundred to five thousand gallons per day, two cents per hundred gallons.   When the quantity used averages from five thousand to ten thousand gallons per day, one and three-fourths cents per hundred gallons.   When the quantity used averages from ten thousand to twenty-five thousand gallons per day, one and one-half cents per one hundred gallons.   When the quantity used exceeds an average of twenty-five thousand gallons per day, one and one-fourth cents per one hundred gallons.   The meter rate for use of water from the waterworks for purely manufacturing purposes and livery stables is hereby fixed at one and one-fourth cents per one hun-

dred gallons; provided, that when the quantity used exceeds fifty million gallons annually by any manufacturing plant, located in one or more blocks adjoining each other, the rate shall be one cent per one hundred gallons.'

"4. And that by section 1722 of said article 3 of said chapter 46 of said Revised Ordinances of 1892, it is provided that:

" 'Licenses for the use of water from the city waterworks shall be issued by the assessor and collector of water rates, and the amounts charged shall conform to the rates established by this article. The rates assessed shall in all cases be paid in advance, and all licenses shall be dated on the first day of the month in which the same are granted. Licenses may be granted for six months or for one year as the applicant may desire, except as hereinafter provided in section 1724.'

"5. The plaintiff further states that the ordinances hereinabove set out and referred to and made a part of this petition were in force and effect at all of the times herein mentioned.

"6. The plaintiff further states that its brewery now is, and at all times herein mentioned was, entirely dependent for its supply of water, by it used and to be used in and about the manufacture and brewing of plaintiff's beer, upon the city waterworks, which at all times hereinbefore mentioned were and now are under the sole control and operation of the defendant, the city of St. Louis.

"7. That the plaintiff as it was authorized to do under the terms and provisions of said sections of said ordinances aforesaid at all times hereinafter mentioned, applied for meters and elected to pay for the quantity of water by it used, at meter rates and to be determined by meter, and complied with the terms of said ordinances by paying the cost of the meter by it used and the cost of placing the same; that it thereafter, and during the period of time hereinafter mentioned,

used large quantities of water, drawn from the said city waterworks, and that thereupon the assessor and collector of water rates of the city of St. Louis, who at all times had sole control and supervision of the assessment and collection of water rates, from time to time ascertained by meter measurement the quantity of water used by plaintiff and demanded and received payment therefor, from the plaintiff, and also estimated the quantity of water used by plaintiff and demanded and received payment therefor, from the plaintiff, and also estimated the quantity of water to be used, and demanded and received payments from the plaintiff for the estimated quantity of water used.

"8.  Plaintiff further alleges and avers that at all of the times hereinafter mentioned, and at the present time, the quantity of water thus used by it, and to be used by it, was and is largely in excess of fifty million gallons annually and that it was and is obliged and bound to pay therefor at the rate of one cent per hundred gallons and no more, as in the aforesaid section of said ordinance provided.

"9.  Plaintiff states that from time to time between the first day of September in the year 1897 and the first day of March, 1899, the plaintiff did use and consume on its premises, for purely manufacturing purposes, in city block number eight hundred and fifty-one of the city of St. Louis, seventy-nine million, twelve thousand and five hundred gallons of water, all drawn from defendant's waterworks; that the water so used and consumed by the plaintiff, if divided into periods of six months, was as follows:  During the period of time beginning with the month of September in the year 1897 and ending with the month of February, 1898, twenty-five million, seventy-two thousand, five hundred gallons; during the period of time, beginning with the month of March in the year 1898 and ending with the month of August in the year 1898, thirty-two million, two hundred and eighty thousand gallons; during the

period of time beginning with the month of September in the year 1898 and ending with the month of February, in the year 1899, twenty-one million, six hundred and sixty thousand gallons.

"10.    That the assessor and collector of water rates did demand and exact from the plaintiff for the water used as aforesaid, payment at the rate of one and one-fourth cents per one hundred gallons and that the plaintiff did pay to the said assessor and collector of water rates for the water used during the period of time as aforesaid at the rate of one and one-fourth cents per one hundred gallons; and that the sum so paid by the plaintiff to the assessor and collector of water rates, amounted to nine thousand, eight hundred and seventy-six dollars.

"11.    Plaintiff further states that under and by virtue of the sections of the ordinance aforesaid, plaintiff should have paid for the water consumed as aforesaid, during the period of time hereinbefore mentioned, at the rate of one cent per one hundred gallons; that the sum which the plaintiff should have paid to the assessor and collector of water rates amounts to the sum of seven thousand, nine hundred and one dollars.

"12.    Plaintiff further states that it made the payments hereinbefore mentioned at the special instance and request and upon the assessment of the said assessor and collector of water rates of said city of St. Louis, and plaintiff further states that said payments made by it as aforesaid were in excess of the legal and customary rate as fixed by the ordinances hereinbefore referred to in the sum of one thousand nine hundred and seventy-five dollars.

"13.    That said payments were made by plaintiff to the said assessor and collector of water rates of said city of St. Louis and for and in behalf of the said city of St. Louis for the use of all water used by plaintiff from the waterworks of the said city of St Louis during the periods of time aforesaid.

"14. Wherefore, plaintiff prays judgment against defendant for the sum of one thousand nine hundred and seventy-five dollars, together with interest and costs and disbursements in this behalf expended."

The demurrer was general, that the petition does not state facts sufficient to constitute a cause of action.

I.

The theory of the plaintiff is that the amount sought to be recovered is in excess of the amount prescribed for manufacturing purposes, where the plant is located wholly on one city block, and that it was paid by the plaintiff under a mistake of fact, and, hence, there exists an implied contract of the defendant to repay it, and, therefore, an action to recover it will lie, as for money had and received by the defendant for the plaintiff's use.

The defense is that the payment was voluntary, with full knowledge of all the facts, and hence an action to recover it will not lie.

The general questions underlying this controversy were fully considered and settled by this court in a prior suit. [St. Louis Brewing Association v. St. Louis, 140 Mo. 428.] The ordinance pleaded in this case (sec. 1742, art. 3, ch. 46, Rev. Ord. St. Louis 1892) so far as it applies to this case is substantially the same as the amended ordinance referred to in that case. And it was then held that where the meter was used for purely manufacturing purposes by a plant located in one or more blocks adjoining each other, and exceeded fifty million gallons a year, the meter rate should be one cent per hundred gallons.

The petition brings the plaintiff within this class, for it alleges that it uses the water for purely manufacturing purposes, in a plant that is located wholly on one city block, and that the amount used exceeded fifty million gallons a year.

But the petition further shows the city's officers charged the plaintiff one and a quarter cents per hundred gallons, and that the plaintiff paid it, in advance, used the water, and then brought this suit to recover the amount alleged to be excessive.

There is no allegation in the petition that the plaintiff paid said amount through a mistake of fact, nor even through ignorance of law. No fact is pleaded of which the plaintiff was ignorant when it made the payment. For aught that is shown by the petition, the plaintiff knew as much about the facts at the time it paid the money as it has since learned, or as it now knows. There is no averment even that the plaintiff was ignorant of the rate prescribed by the ordinance when it paid the money.

It is a well-settled rule of law that money paid through a mistake of fact, may be recovered in an action for that purpose. [15 Am. and Eng. Ency. Law (2 Ed.), p. 1103, and cas. cit.] But this rule is subject to the qualification that the party paying must make the payment under a bona fide belief that the money is due. For if he did not believe he owed the money at the time he paid it, he can not recover it. [Idem, p. 1105.]

This rule applies to payments to municipal corporations as well as to individuals. [20 Am. and Eng. Ency. Law (2 Ed.), p. 1158, and cas. cit.] But in all such cases the mistake must be one of fact and not of law, for all persons are deemed to have notice of the law. [Ibid.] An analysis of the cases relied upon by the plaintiff shows that they follow this rule, or else that there was an element of duress in the payment.

The rule stated has been uniformly followed in this State in reference to all kinds of payments, including taxes, licenses, and claims, and the doctrine is firmly established that payments made with a full knowledge of all the facts constitute voluntary payments and can not be recovered, and that mistake or ignorance of law gives no right to recover. [Walker v. St. Louis, 15

Mo. 1. c. 575; Christy's Admr. v. St. Louis, 20 Mo. 143; Claflin v. McDonough, 33 Mo. 412; Couch v. Kansas City, 127 Mo. 436; Teasdale v. Stoller, 133 Mo. 645; Douglas v. Kansas City, 147 Mo. 1. c. 437; see, also, 22 Am. and Eng. Ency. Law (2 Ed.), pp. 609 and 613.]

On the other hand, it is equally well settled that payments coerced under duress or compulsion may be recovered. What constitutes duress has been the subject of much discussion. The general rule was first laid down that "a payment is not to be regarded as compulsory unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid, or to prevent a seizure by a party armed with apparent authority to seize the property. The courts, however, have shown a tendency in the later decisions to extend the doctrine of the earlier common law with regard to compulsory payment, and at the present time, beyond a few general principles, they do not attempt to lay down any definite and exact rule of universal application by which to determine whether a payment is voluntary or compulsory." [22 Am. and Eng. Ency. Law (2 Ed.), p. 613, and cas. cit.]

Among the instances of the relaxation of the strictness of the original rule, is the case of payments constrained by business exigencies, that is, payments of illegal charges or exactions under apprehension on the part of the payors of being stopped in their business if the money is not paid.

Thus, in Swift Company v. United States, 111 U. S. 1. c. 28, it was held that receiving the discounts allowed by the Federal Stamp Act, in stamps instead of in money as the act provided, was duress. The court said: "This was in effect, to say to the appellant, that unless it complied with the exaction, it should not continue in business; for it could not continue business without stamps, and it could not purchase stamps except upon the terms prescribed by the commissioner of internal

revenue. The question is, whether the receipts, agreements, accounts, and settlements made in pursuance of that demand and necessity, were voluntary in such sense as to preclude the appellant from subsequently insisting on its statutory right. We can not hesitate to answer that question in the negative. The parties were not on equal terms. The appellant had no choice. The only alternative was to submit to an illegal exaction, or discontinue its business. It was in the power of the officers of the law, and could only do as they required. Money paid, or other value parted with, under such pressure, has never been regarded as a voluntary act within the meaning of the maxim, *volenti non fit injuria*."

In Ratterman v. Express Co., 49 Ohio St. 608, it was held that payment to a county treasurer, by an express company, of an illegal tax on its gross receipts from interstate business, under protest, and with notice of an intention to recover it, is an involuntary payment, when made to avoid the penalties of the statute, which made it unlawful for the company to do or transact any business when the tax was not paid within twenty days after it became due, and made the doing thereof a misdemeanor, and that an action would lie to recover money so paid.

In that case it was also pointed out that in Baker v. Cincinnati, 11 Ohio St. 534, it was held that payment of an illegal license tax which was exacted as a condition precedent to the privilege of giving a theatrical performance, was a payment under compulsion and might be recovered; and also that in Cotoir v. Waterson, 38 Ohio St. 319, it was held that the payment of an illegal liquor license for the privilege of doing business, was a payment under compulsion and could be recovered. And the rule was deduced that the payment of an illegal tax or license "when made to save from destruction a business already established," constituted a compulsory payment, and the money could

be recovered. True, some stress is laid in that State, upon the fact that the party making the payment, protested against paying before doing so, and announced an intention to sue for its recovery. But in other States it is held that: "If the payment of an unjust claim is knowingly compelled, it is not essential that the payor expressly protest against paying in order to entitle him to recover back the money. To render a payment compulsory, the compulsion must have been illegal, unjust or oppressive." [22 Am. and Eng. Ency. Law (2 Ed.), p. 613, and cas. cit.]

In Insurance Co. v. Herriott, 109 Iowa 606, it was held that an action would lie to recover an illegal tax paid by an insurance company as a condition to its right to do business in the State, under a threat of the Auditor that he would enforce the tax and revoke the company's license to do business in the State if it was not paid.

In Guetzkow Bros. Co. v. Breese, 96 Wis. 591, it was held, that where a lessee had taken out insurance on property covering the lessor's interest, as well as his own, and after a loss, the lessor refused to execute proofs of loss unless the lessee would pay lessor a sum in excess of his interest, and the lessee did so, in order to obtain the insurance money at once to enable him to go on with his business, such payment constituted a payment under duress, and an action would lie for its recovery.

In Maguire v. Association, 62 Mo. 344, it was held by this court, that where a collector demanded payment of an illegal tax upon personal property, and threatened to seize the property unless it was paid, the payment was compulsory and could be recovered.

In Westlake & Button v. St. Louis, 77 Mo. 47, it was held that payment of a water license under threat of turning off the water if it was not immediately paid, is payment under compulsion, and if the charge is excessive, the excess might be recovered. Reference is

made in that case to the fact that the payor protested against paying before doing so, but the decision is bottomed upon the ground that the payment was compulsory, because the payment was made to prevent immediate and incalculable injury to the payor's business.

In Brewing Assn. v. St. Louis, 140 Mo. l. c. 423, it was said: "The ordinances in force in the city of St. Louis provide that in case consumers refuse to pay the prescribed charge or rate for water, it should be turned off. Under the agreed statement of facts plaintiff was entirely dependent upon the water of the city for its supply in operating its factories, and it was compelled to pay one and one-fourth cents per one hundred gallons or close them. Under these circumstances plaintiff paid the charges exacted, and this suit is to recover the excess so paid. It has been held by this court, and may be taken as settled law in this State, that payment in such circumstances is compulsory and if the charge is excessive the excess may be recovered from the city."

It only remains to apply these principles to the case at bar. The petition wholly fails to state facts sufficient to bring this case within the rule as to payments made through a mistake in fact. In truth, the most careful scrutiny of the petition would not suggest any such idea to the most discriminating mind. The only question remaining is as to whether the petition states facts sufficient to bring the case within the rule as to payments made as a condition to its right to continue its business. The only allegation of the petition in this regard is: "The plaintiff further states that its brewery now is and at all times herein mentioned was entirely dependent for its supply of water by it used and to be used in and about the manufacture and brewing of plaintiff's beer, upon the city waterworks, which at all times hereinbefore mentioned were and now are under the sole control and operation of the defendant, the city of St. Louis."

It is true, as defendant claims, that there is no

allegation in this petition, as the fact appeared in Brewing Co. v. St. Louis, supra, that the ordinance of the city gave authority to shut off the water if the license was not paid, nor that plaintiff had to pay the amount demanded or close its business, but the petition does charge that the plaintiff's brewery was wholly dependent upon the city waterworks for its supply of water, and the ordinance pleaded provides that the license shall be for six months and shall be paid for in advance.

If the petition had alleged that the city threatened to turn off the water if the license was not paid, as was averred in the Westlake & Button case, or that the city ordinance gave authority to turn off the water if the license was not paid, as appeared to be the fact in the Brewing Company's case, there could be no doubt that the petition stated a cause of action within the rules laid down in those cases.

The allegations of this petition in this regard are that the plaintiff was entirely dependent upon the city waterworks for its supply of water, of which it is alleged it used 79,012,500 gallons in eighteen months, and that the ordinance required it to procure a license for six months and pay for the water in advance.

If it was entirely dependent upon the city for its water supply, it follows as a necessary and logical sequence that it could not continue to carry on, but would have to close its business. And if it is true, as the petition alleges, that the assessor and collector of water rates demanded and exacted from the plaintiff the payment of the excessive rate, and required it to pay for the water license for six months in advance, it can not be fairly said that the petition does not state facts sufficient to withstand an attack by a general demurrer. When so attacked, all the facts that are well pleaded, and all the inferences of fact that may fairly and reasonably be drawn from the facts pleaded, must be taken as true. In other words, if the facts essential to a re-

covery are pleaded, however inartificially or defect-ively, a general demurrer will not lie. If the necessary facts are stated but are defectively stated, a special de-murrer or a motion to make more definite and certain is the proper remedy.

From the fact that the plaintiff is wholly depend-ent upon the city for its supply of water, the fact that it will have to close its business unless it gets water from the city is logically inferable, for it is a matter of common knowledge that beer is composed mostly of water and can not be made without it. If the city re-quires water licenses to be paid for six months in ad-vance, it is a fair inference that it will refuse to let plaintiff have water, or, in other words, will shut off its water supply, if it is not so paid; and if the col-lector exacted one and a quarter cents per hundred gal-lons, when he was only entitled to charge the plaintiff one cent per hundred gallons, be true, as the petition alleges, it follows that the petition states such facts as bring this case within the rules laid down in the cases of Westlake & Button v. St. Louis, supra, and St. Louis Brewing Assn. v. St. Louis, supra, and this being true, the learned trial court should have overruled the de-murrer to the petition.

For these reasons the judgment is reversed and the cause remanded to be proceeded with in accordance herewith. All concur.