## ALVAH W. BROWN, Respondent, v. J. A. WORTHINGTON, Appellant.

### St. Louis Court of Appeals, January 9, 1912.

1. **DURESS: Payment: What Constitutes Duress.** When a payment is made under such pressure or constraint as compels a man to go against his will and virtually takes away his free agency, it amounts to duress, irrespective of any manifestation or apprehension of force.

2. ————: ————: ————: **Facts Stated.** Plaintiff, having an option to purchase a lot of hogs from defendant within a specified time, within the period of the option resold a portion of them, but was then informed by defendant that he could not have the lot without paying a sum in excess of the contract price, and to obtain possession, in order to fulfill his contract with his vendee, plaintiff paid the sum demanded. *Held,* in an action by plaintiff to recover the excess, it was a question for the jury, whether the conduct of defendant placed a restraint on plaintiff sufficient to overcome the will of a person of ordinary firmness, so as to destroy his free moral agency.

3. ————: ————: ————: **Instructions: Questions of Law and Fact.** In such an action, an instruction given for plaintiff *held* to be erroneous, in assuming, as a matter of law, that if the facts hypothesized were found to be true, moral duress existed, instead of submitting that question to the jury to determine as a question of fact.

4. **CONTRACTS: Duress: Validity.** A contract made under duress is not void, but voidable.

5. ————: ————: **Ratification.** A contract made under duress may be rendered valid by ratification.

6. **DURESS: Payment: Ratification: Question of Law.** Unless the proof is conclusive that one who made a payment under duress subsequently ratified the transaction, ratification may not be declared as a matter of law.

7. **BILLS AND NOTES: Payable in Foreign State: What Law Governs.** The obligation and duties of the maker of a note executed in this state and payable in another state are governed by the laws of the latter state.

8. **EVIDENCE: Laws of Other States: Presumptions: Bills and Notes.** The rule existing in this state prior to the Negotiable Instrument Law, to the effect that possession of a promissory note payable to order and duly indorsed by the payee is prima facie evidence of title in the holder, authorizing the maker to pay without further inquiry touching the title, is presumably the rule of Michigan, in the absence of evidence as to the law of that state.

9. **DURESS: Payment: Ratification: Question for Jury.** Plaintiff, having contracted to purchase a lot of hogs from defendant, resold a portion of them, after which defendant demanded a sum in excess of the contract price, which plaintiff paid, in order to get possession of the hogs for delivery to his vendee. The excess payment was made by means of a check and promissory note. Defendant retained a portion of the hogs as a pledge to secure the payment of the note. The check was paid by the bank upon which it was drawn, in the usual course of business, and the note, having been indorsed by defendant in blank, without recourse, was presented to plaintiff by a bank, and was paid by him. In an action to recover the amount paid by plaintiff in excess of the contract price, on the theory it had been paid under duress, *held*, that inasmuch as defendant had retained a portion of the hogs to secure the payment of the note, and inasmuch, also, as the note, being indorsed without recourse, was governed by the law of Michigan, where presumably possession of a note payable to order and duly indorsed by the payee is prima facie evidence of title in the holder, it was a question for the jury whether plaintiff, by paying the check and note, had ratified the payment of the excess.

10. ———: ———: ———: **Burden of Proof.** Ratification of a payment made under duress, in an action to recover the sum paid, is an affirmative defense, and the defendant has the burden of proof.

11. **TRIAL PRACTICE: Uncontradicted Evidence: Question for Jury.** Though evidence for one holding the burden of proof is uncontradicted, the question of the veracity of the witnesses and the weight and value of their testimony is for the jury, unless a clear admission appears.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman*, Judge.

REVERSED AND REMANDED.

*Selden P. Spencer* and *F. C. Donnell* for appellant.

(1) Neither does the petition allege nor the evidence prove that at the time the note and check were given, or at the time they were paid, the facts were such as to constitute duress, and consequently, even if it be held that defendant was not then entitled to the alleged excess payment, the plaintiff, who paid his money with full knowledge of the facts, is not entitled to recover the payment made to defendant. (a) The general rule forbids recovery. Cyc. 30; 1311; Buchanan v. Sahlein, 9 Mo. App. 552; Glass Co. v. Boston, 4 Metc. (Mass.) 181; Parker v. Lancaster, 84 Me. 512; Wood v. Telephone Co., 223 Mo. 537. (b) The petition fails to allege that duress existed when the note and check were paid, and the allegations of prior compulsion, fail to remedy its fatal weakness, for prior compulsion, not continued to the date of payment, gives no right of recovery. 22 Am. & Eng. Enc. 614; Fellows v. School District, 39 Me. 559; Cunningham v. Boston, 15 Gray (Mass.) 468; Teem v. Ellijay, 89 Ga. 154. (c) Meaning of duress. Wolfe v. Marshall, 52 Mo. 167; Buchanan v. Sahlein, 9 Mo. App. 552; Wood v. Telephone Co., 223 Mo. 537, 22 Amer. & Eng. Enc., 614. (d) The only instances where recovery on ground of duress has been permitted, do not include such cases as the one at bar. Wood v. Telephone Co., 223 Mo. Mo. 537; 35 Cyc. 27; Brewing Co. v. St. Louis, 187 Mo. 367; Hackley v. Headley, 45 Mich. 569; Armstrong v. Latimer, 165 Pa. St. 398. (e) Refusal to perform contract does not constitute duress. Wood v. Telephone Co., 223 Mo. 537; 9 Cyc. 448; Tucker v.

State, 72 Ind. 242; Silliman v. United States, 101 U. S. 465. (d) No showing that Brown did not have adequate legal remedy. Benjamin on Sales (5 Ed.), page 578; 2 Schouler on Personal Property (3 Ed.), secs. 284-286, page 292; 6 Amer. & Eng. Ency. 467; Buchanan v. Sahlein, 9 Mo. App. 552; Wood v. Telephone Co., 223 Mo. 537; 30 Cyc. 1311. (2) Error was committed in rejecting evidence to show the withdrawal by defendant of the offer made to plaintiff on July 10, 1907, before it was accepted, there being evidence to the effect that the offer was made without consideration. Lawson on Contracts (2 Ed.), sec. 32, page 39. (3) Error was committed in sustaining plaintiff's objection to being questioned as to the reason for delaying the filing of his suit approximately two years from the time the money was paid. Greenleaf on Evidence (16 Ed.), section 195-a, page 325; 1 Wigmore on Evidence (1904 Ed.), page 367, section 284. (4) Error was committed in giving plaintiff's instruction number 1 for the reason that it substitutes the opinion of the court for that of the jury as to whether the facts in evidence constitute duress, and ignores the right of the defendant to have the jury pass on the question as to whether those facts were sufficient to overcome the mind and will of a person of ordinary firmness. Buchanan v. Sahblein, 9 Mo. App. 552; Wood v. Telephone Co., 223 Mo. 537; 30 Cyc. 1325. (5) Error was committed in the court's refusal to give defendant's requested instruction number 2, to the effect, that if defendant was acting within his authority as agent of a corporation, and that plaintiff knew he was so acting at the time he signed the agreement of July 10, 1907, and knew that he did not intend to bind himself personally, the verdict should be for the defendant. Emery, Bird, Thayer v. Coomer, 87 Mo. App. 404.

*R. L. Shackelford* and *J. C. Kiskaddon* for respondent.

(1) Where one is compelled, for the purpose of meeting a pressing and imminent emergency, to pay for what he ought not to pay or become liable to suffer loss, then such payment is not voluntary, and he can recover the amount thus paid. Font v. Geraldin, 64 Mo. App. 165; Niedermeyer v. Curators, 61 Mo. App. 654; Wells v. Adams, 88 Mo. App. 215; Westlake v. St. Louis, 77 Mo. 47; Kerrigan v. Kelly, 17 Mo. 275; Quinnette v. Washington, 10 Mo. 53; Wilkerson v. Hood, 65 Mo. App. 491; Lappin v. Crawford, 186 Mo. 462; Tandy v. Com. Co., 113 Mo. App. 409; Warrensburg v. Moeller, 77 Mo. 56; Douglas v. Kansas City, 147 Mo. 428; Brewing Co. v. St. Louis, 187 Mo. 367; State v. Slayback, 90 Mo. App. 300; Construction Co. v. Hays, 191 Mo. 248; Railroad v. Patterson, 41 Ind. 312; Spaids v. Barrets, 57 Ill. 289, 293; 30 Cyc. 1303; Glass Co. v. Boston, 4 Metc. (Mass.) 181; Lingenfelder v. Brewery Co., 103 Mo. 578. (2) And it makes no difference, even if the moral duress arises out of a breach of contract, if the necessity of the person paying is pressing and imminent. See a number of cases cited to point 1 among them the following: Niedermeyer v. Curators, 61 Mo. App. 654; Tandy v. Com. Co., 113 Mo. App. 409; Wells v. Adams, 88 Mo. App. 215; Construction Co. v. Hays, 191 Mo. 248; Lappin v. Crawford, 186 Mo. 462; Lingenfelder v. Brewing Co., 103 Mo. 578. (3) And it is no answer to an allegation of compulsory payment that the party has another remedy. Wilkinson v. Hand, 65 Mo. App. 491; Wells v. Adams, 88 Mo. App. 215; Peysor v. Mayne, 70 N. Y. 497.

NORTONI, J.—This is a suit for money had and received to plaintiff's use, through moral duress imposed upon plaintiff by defendant. Plaintiff recovered and defendant prosecutes the appeal.

Under Sec. 3939, R. S. 1909, the case was transferred to the Springfield Court of Appeals for determination, and that court disposed of the same, as will appear from its opinion, reported under the title of Brown v. Worthington, 152 Mo. App. 351, 133 S. W. 93. Subsequently, the Supreme Court declared the legislative act, authorizing the transfer of cases from one court of appeals to another, to be unconstitutional and the proceedings had in the Springfield Court thereunder to be *coram non judice*. Because of this, the appeal has been argued and submitted here, and upon consideration we find ourselves unable to concur in the view of the case expressed in the opinion of the Springfield Court.

Plaintiff resides at Grand Rapids, Michigan, and is a dealer in hogs. Defendant resides in this state and is engaged in the same avocation. On July 10, 1906, defendant possessed a large drove of hogs on Chesley Island, in the Mississippi river near St. Louis, and of these plaintiff desired to purchase a considerable number. On that day, defendant submitted to plaintiff a written proposition touching the sale of 1250 of the hogs on Chesley Island to him, which by its terms accorded plaintiff thirty days for acceptance. The writing is as follows:

"Chesley Park, Mo., 7-10-07.

"I hereby offer for sale to A. W. Brown, of Grand Rapids, Mich., all of my hogs on Chesley Island, with the exception of all spring and summer pigs of this year, and also with the exception of four crippled or barren hogs to be selected by me, the count of hogs sold not to be less than twelve hundred and fifty hogs, for the amount of eighteen thousand five hundred dollars cash, or drafts cashable.

"I will sell the same lot of hogs to you for twenty-one thousand six hundred dollars on time, provided

you pay one-third cash and give bankable approved notes for the balance on six months' time.

"You may have this option for thirty days.

"Unless you take the hogs within ten days you must pay me ten dollars per day for each day I keep hogs thereafter, provided you accept of this proposition within thirty days, said charge for keeping to be in proportion with the number you leave here after ten days.

"You must leave sows now nursing until their pigs are eight weeks old.

"Sows held back to be shipped in car later.

"All expense of shipping to be borne by purchaser. I will help load on boat.

"Notes must be salable. Holding to be subject to unforeseen contingencies.

"J. A. WORTHINGTON."
"Received $5.00." (On separate sheet.)

The evidence tends to prove that plaintiff paid defendant five dollars at the time as earnest money, and the correspondence between the parties reveals, beyond question, that he accepted, within due time, the proposition pertaining to the sale of 1250 hogs for $18,500 to be paid in cash or drafts cashable. A few days thereafter, plaintiff entered into a written contract with one McPherson, a dealer, of Omaha, Nebraska, whereby he sold to McPherson 1000 head of the hogs purchased by him from defendant, which were to be delivered to McPherson on July 30, 1906, at Chesley Island. Plaintiff wrote defendant that he would be in St. Louis about July 28 or 29 to settle for the hogs, and, though several letters of defendant to plaintiff concerning the same are in evidence, in none of them does it appear that he objected in any manner to carrying out the contract. Indeed, all of defendant's letters suggest that he expected to deliver the hogs to plaintiff on the terms agreed upon, for cash

and cashable drafts, that is, $18,500. In accordance
with his promise, plaintiff came to St. Louis on July
29, the day before he was to deliver the hogs to Mc-
Pherson, and tendered to defendant cash and cash-
able drafts to the amount of $18,500 for the 1250 hogs.
Defendant, then, for the first time, objected and de-
clined to receive this amount in payment. The parties
parleyed about the matter for some time during the
afternoon of that day, and it appears from plaintiff's
evidence that he informed defendant he had sold 1000
of the hogs to McPherson for delivery on the following
day. It is said defendant finally agreed to abide by the
contract and accept $18,500 in full payment, but de-
ferred the settlement until the following morning for
the purpose of having the bank drafts examined by
his banker. On the following morning, July 30, de-
fendant said he had changed his mind and would not
accept the amount tendered. He insisted on hav-
ing $22,600 for the hogs but finally reduced his demand
to $20,000. According to the evidence of plaintiff, he
was compelled, through the urgent necessities of the
situation, to pay defendant $20,000 in order to get
possession of the hogs so that he might make delivery
of the 1000 head to McPherson, who came on to re-
ceive them that day. There is no conflict in the evi-
dence touching the matter of the amount which plain-
tiff was required to pay and did pay defendant on
July 30 for the 1250 hogs mentioned in the contract.
Plaintiff paid to defendant in cash and cashable drafts
the sum of $18,500 and gave his personal check for $500
more and a promissory note for $1000 at six per cent
interest, due in thirty days.

The entire payment thus made was $20,000 and
this suit is for the amount of $1500, which plaintiff
claims he was coerced into paying, less a little expense
for the board and keep of the hogs for certain days
which defendant kept them under the contract after
ten days from its date.

It is argued plaintiff is not entitled to recover and the court should have directed a verdict for defendant because the $1500 must be regarded as having been voluntarily paid to defendant, but we are not so persuaded. The strictness of the common law rule touching the matter of duress has been much relaxed in the development of the law. Originally "duress" meant only duress of the person, and nothing short of such duress, amounting to a reasonable apprehension of imminent danger to life, limb or liberty, was sufficient to enable the party to recover back the money paid. Subsequently, in keeping with the principles of equity and good morals, the doctrine was extended so as to recognize duress of property as a sort of moral duress, which might, equally with the duress of the person, entitle the party to recover back money paid under its influence. While this view prevailed, some of the cases asserted the doctrine that, unless it appeared the money was paid to release the person or property of the payer from detention or to prevent a seizure of either by one having apparent authority in that behalf, a recovery was not to be allowed. But though such were the former rules of decision, the modern authorities go farther and generally declare that such pressure or constraint as compels a man to go against his will virtually takes away his free agency and destroys the power of refusing to comply with the unlawful demand of another constitutes duress, irrespective of the manifestation or apprehension of force. Under this view, it is said the real and ultimate fact to be determined in every case is whether or not the party paying the money really had a choice, that is, whether he had his freedom of exercising his will. Numerous authorities declare that if one is compelled by business necessity to surrender to the constraint involved in the unlawful demand and make the payment, moral duress appears. In other words, in such circumstances, it may be found as a fact that the party pay-

ing has not had his freedom of exercising his will and paid the money under moral duress, in which event, if it is against equity and good conscience for the money to be withheld from plaintiff, it may be recovered. Such is the undoubted rule of decision in this state as will appear by reference to the following authorities. [Niedermeyer v. Curators of State University, 61 Mo. App. 654; Fout v. Giraldin, 64 Mo. App. 165; Wells v. Adams, 88 Mo. App. 215; Am. Brewing Co. v. St. Louis, 187 Mo. 367, 377, 86 S. W. 129; Westlake v. St. Louis, 77 Mo. 47; see, also, 30 Cyc. 1303, 1304, 1305.]

Here it appears plaintiff was obligated under a written contract to deliver 1000 head of the hogs on Chesley Island to McPherson and that McPherson came from Omaha to St. Louis to receive them on the very day the $1500 was so unlawfully exacted. Plaintiff parleyed with defendant over the matter and the only alternative to paying the money was to breach his contract with McPherson. Certainly such constitutes not only a business necessity but an urgent one, which tends to show that plaintiff did not have the free exercise of his will in the matter. Furthermore, the precepts of equity and good conscience suggest that money so obtained is wrongfully withheld from and should be returned to plaintiff. But though such be true, plaintiff's first instruction is erroneous, in that it omitted to submit the question as to whether or not he had the free exercise of his will or was constrained by the business necessity revealed to pay the money, that is, give the check and execute his note to defendant. This instruction hypothesizes the facts of the case very well, but it seems to assume as a matter of law that if those facts were found to be true, then moral duress appeared. Such is not true unless the jury believed those facts and circumstances cast a restraint upon plaintiff sufficient to overcome the will of a per-

son of ordinary firmness so as to destroy his free moral agency. See authorities, supra.

There can be no doubt that a contract made under duress is not absolutely void but voidable only, and this being true, it is susceptible of ratification so as to render it entirely valid thereafter. Thus, if a person, having been constrained by duress to make a contract, afterward voluntarily acts upon it or in any way affirms its validity, he thereby precludes himself from afterward avoiding it. [9 Cyc. 443; Ferarri v. Board of Health (Fla.), 5 South. 1; Sornborger v. Sanford (Neb.), 52 N. W. 368.] Because of this, it is said though plaintiff was constrained to give his check and execute the note under duress practiced upon him by defendant on July 30, he is not entitled to recover for the reason it appears that his personal check was promptly paid by his bank on presentment without a countermand from him and that he paid the note at maturity, thirty days thereafter, without objection and this, too, when no duress whatever obtained. In other words, it is said though duress obtained at the time the note and check were given, the transaction was subsequently ratified through payment made at a time when no duress appeared whatever. This matter pertaining to a ratification and as to whether or not duress continued until the payment was made was not submitted to the jury and we believe it should have been, for the evidence warranted a finding of fact thereon. As we understand the record, the proof is by no means conclusive that plaintiff ratified the transaction by the subsequent payment of the check and note without objection when no restraint touching the exercise of his free will concerning the same appeared. And unless it be so, we may not declare as a matter of law that a ratification was voluntarily had. It appears by a writing in evidence of date July 30, made between the parties, contemporaneously with the check and note, that defendant retained posses-

sion of one carload of hogs which was not to be shipped to plaintiff until full payment of the note for $1000 was received by defendant. This being true, the case reveals that though plaintiff received a sufficient number of hogs on July 30 to satisfy his contract with McPherson, a considerable number thereof were withheld in defendant's possession as a pledge for the payment of his $1000 note. Until the note was paid, plaintiff was not entitled, under the contract, which appears to have been exacted of him under duress, to possession of the last carload of hogs. Of course, from this the jury might find that duress continued during the interim until the note was paid. As to plaintiff's $500 check, the record reveals no more than that it went forward in due course of business and was promptly paid by his bank. Such being true, the jury were authorized to find, had the question been submitted to them, that plaintiff was not permitted to exercise his free agency toward countermanding its payment as he was necessarily constrained by the circumstance that defendant still retained possession of a carload of his hogs though the writing stipulated only that they were held as a pledge to the $1000 note. At best had plaintiff countermanded the payment of the check, he could have expected defendant to make him further trouble about getting possession of the remaining carload of hogs, for his course of conduct theretofore suggested that any and every pretext would be seized upon, to the end of defeating the original contract of sale. As before said, touching the payment of the $1000 note, defendant not only retained possession of one carload of hogs as security therefor so as to compel its payment and continue the duress throughout but he so negotiated the note as well in a manner as to suggest it was in the hands of an innocent holder. By its terms the note was made payable at Grand Rapids, Michigan. Because of this fact we are not concerned with the provisions of our negotiable instrument law,

for the law of the place of payment or performance, so stipulated in the contract, entered into the undertaking as a controlling factor as to the obligation and duty of the maker. [See Daniels, Negotiable Instruments (5 Ed.), sec. 865; Kavanaugh v. Sup. Council Royal League, 158 Mo. App. 234, 138 S. W. 359.] The law of Michigan, touching promissory notes, is not in evidence and it is, therefore, to be presumed that the identical rule obtains there as obtained here prior to our negotiable instrument statute. Under this rule, possession of a promissory note, payable to order and duly indorsed by the payee, is prima facie evidence of title in the holder and, therefore, authorizes the maker to pay it without further inquiry touching the title. [Lowrey v. Danforth, 95 Mo. App. 441, 69 S. W. 39; Dawson v. Wombles, 123 Mo. App. 340, 100 S. W. 547.] From indorsements on the note in evidence, it appears that it was negotiated by defendant on the very day he received it. The indorsement is without recourse and wholly unrestricted as though the complete title thereto were assigned. Nothing on the note whatever suggests that defendant continued to own it at the time it was paid or that the bank held it for collection. On the contrary, when the note was presented to plaintiff for payment and when paid by him, it suggested on its face and through the indorsements thereon that it had been negotiated before maturity, without recourse, so as to pass the title into the hands of an innocent purchaser. Plaintiff was, therefore, justified in paying the note without objection when presented, and his act in so doing may not be declared as a matter of law a ratification thereof notwithstanding prior duress. It is true defendant testified that he indorsed the note without recourse and delivered it to his bank for collection, but this does not appear on the note itself and it does not appear that plaintiff had any notice whatever that defendant retained the title thereto, if he did, at the time it was paid. At

any rate, the mere fact defendant testified that he indorsed the note and placed it in the hands of the bank for collection is not sufficient to conclude that question as one of law, even though it were not expressly denied by proof in the case on the part of plaintiff. The matter of ratification is an affirmative defense touching which the burden of proof rests with defendant, and the rule is that though evidence for one holding the burden of proof is uncontradicted, the question of the veracity of the witness and the weight and value of the testimony are nevertheless for the jury, unless a clear admission appears. [See Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907.]    It is obvious that we may not declare a ratification conclusively appears here, but the question is one for the jury which should be inquired into and ascertained upon a retrial.

For the error in plaintiff's instruction, above pointed out, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur; *Reynolds, P. J.,* in the result only.