HARRY L. WHITE and RUBY L. WHITE, Appellants, v. BOYLE TRUST & INVESTMENT COMPANY, a Corporation, Respondent.—No. 41027, 217 S. W. (2d) 366.

Division Two, February 14, 1949.

*James R. McDowell* and *Green & Green* for appellant.

*Joe C. Barrett, Frank M. Gilliland* and *A. W. Landis* for respondent.

[366] BARRETT, C.—This is a suit to set aside a deed to 2160 acres of land in Howell County, Missouri, upon the theory that the conveyance was compelled by "duress of property" (6 Thompson, Real Property, Sec. 3019) or more accurately perhaps (Annotation 79 A. L. R., 1. c. 660), in view of the circumstances relied upon, on the ground that the conveyance was wrongfully coerced under such circumstances of business necessity or compulsion as to constitute duress. Johnson v. Ford, 147 Tenn. 63, 245 S. W. 531; Brown v. Worthington, 162 Mo. App. 508, 142 S. W. 1082; 2 Restatement, Contracts, Sec. 492; Restatement Restitution, Sec. 78b(IV); 45 Mich. L. R. 253; Annotations.79 A. L. R. 655; Ann. Cas. 1918B., p. 516.

The suit arose out of these circumstances: Mr. and Mrs. T. Payne Flinn were the owners of the Porter Building in Memphis, Tennessee, a ten-story building described as the first skyscraper in Memphis. The building was mortgaged to the respondent, Boyle Trust and Investment Company and in 1942 the mortgage was in arrears, the total indebtedness then amounting to about $60,000. The respondent was anxious to be rid of the mortgage and there had been several unsuccessful attempts to sell the property. In June 1942, through the agency of another real estate dealer, the appellant, Harry L. White, became interested in the property and suggested a method by which it might be disposed of and the mortgage reduced and punctually

kept up. It was his idea, which he proposed to Boyle, that the Flinns should sell the property, Boyle eventually becoming the owner. Boyle in turn would cancel the $60,000 mortgage and execute a ninety-nine year lease on the building at an annual rental of $2500, for which he would be paid $15,000 cash, thus reducing the total indebtedness to $45,000. At the same time Boyle was to give White an option until August 1, 1943 to purchase the property for $45,000. Mr. Boyle was favorably disposed to the proposition and on July 10th, 1942 White entered into a written contract with the Flinns in which he agreed to purchase the property from the Flinns and assume the indebtedness up to $60,000. [367] On July 16th, 1942, after securing the contract to purchase from the Flinns, White reduced his proposal to Boyle to writing and Boyle accepted it. The proposal was in the form of a letter from White to Boyle and, after setting forth the terms, concluded with this sentence: "I further agree that if this transaction has not been completed by August 15th, 1942, then your company shall no longer be bound under this agreement."

A ninety-nine year lease of the building was prepared and White set about to sell the lease and consummate the entire transaction but he was unable to or did not conclude it within the time specified, August 15, 1942. However, on August 25th, 1942 he entered into a written contract in which he sold Mr. W. H. Pitts of Jonesboro, Arkansas, the ninety-nine year lease for $32,500 and 8720 acres of land in Howell County, Missouri. On September 30th White notified Boyle that Pitts or his representative would be in Memphis on the next day for the purpose of closing the sale of the lease and, thereupon, Boyle notified White that the prescribed time had expired and he did not intend to go through with the deal. White then tendered Boyle $17,500 cash in payment of the lease and insisted that he comply with the original contract of July 16th but Boyle refused the tender and declined to go ahead with the deal unless White would enter into a guaranteed option contract to purchase the reversion. On the next day, October 1, 1942, White entered into an option contract with Boyle in which he agreed to exercise the option to purchase the reversion for $45,000 by the 31st day of July 1943. As a guaranty that he would exercise the option the contract required White to escrow 2000 acres of the Howell County land or in lieu of the land $5000 cash which he was to forfeit if he failed to exercise the option by July 31, 1943. White escrowed the land and Boyle then carried out the agreement. White, however, did not exercise the option and Boyle recorded the deed to the Howell County land. This is the conveyance that White now seeks to set aside.

As we have said, the theory of White's action is that Boyle took advantage of White's plight and his urgent necessity of being able to deliver Pitts the ninety-nine year lease and wrongfully coerced the new option contract and the deed to the 2000 acres,—such "busi-

ness compulsion" as to constitute duress. Annotation 79 A. L. R. 345. He has simplified the issues, however, by conceding that the entire cause turns upon whether the time limit, August 15, 1942, as specified in the original contract of July 16th, 1942 was waived by the acts and conduct of Boyle. He contends that the time limit of the original contract was waived and he admits if it was not waived, as the trial court found, that his cause of action must fail. The appellant uses the word "waiver," but the word "estoppel" is probably the more appropriate term to employ if the appellant is entitled to recover. Annotation 107 A. L. R. 345, 347. It is his contention that Boyle extended the July 16, 1942 agreement and its specified time limit of August 15th "from time to time indefinitely, or until such time as the duty devolved upon Boyle to announce to the interested parties that he was definitely terminating the contract, and that (the) extensions were also terminated." In short, it is his contention that Boyle by his acts and conduct so dealt with him and the contract before, during and after its execution and despite the specified time limit that he is estopped from denying the continued existence of the original contract or from forfeiting it and exacting the new guaranteed option and the pledge of the deed to the land in Howell County. Bammert v. Kenefick, (Mo.) 261 S. W. 78; Annotation 157 A. L. R. 1311, 1329.

The ultimate difficulty with the appellant White's contention is that it depends upon whether his version of the transaction is the more probable and to be accepted or whether Boyle's version is to be accepted and in passing it may be noted that this question may be resolved upon this record and trial de novo without aspersing the credibility of any of the witnesses or parties. White testified, despite the fact that the time limit was placed in the original contract upon Boyle's insistence, that they had always agreed or tacitly understood that the time limit was to be [368] ignored and that he was to have a reasonable time in which to consummate the transaction. And, from his point of view, there were several circumstances from which he could and probably did think so. He testified that Boyle explicitly agreed to waive the time limit. In addition, he claimed that he kept Boyle informed of the progress he was making and of the innumerable difficulties he was encountering, even after the 15th and 25th of August, and that Boyle encouraged him to proceed and conclude the deal. Boyle, in testifying, denied all these facts and circumstances. Furthermore, even though Boyle may have driven a rather hard bargain, there are circumstances corroborative of his claim that he did not waive the time limit. In the first place he was anxious to be rid of the property and the loan. The property had been unsuccessfully hawked about Memphis for months and Boyle was insistent upon so contracting and handling the property that he would have a firm bar-

gain to dispose of it and reduce the mortgage. In this connection, there were circumstances in the transaction, whether he was aware of them or not, illustrative of the difficulties encountered in disposing of this property or the lease and the reason Boyle was insistent on a firm contract. The day after Pitts entered into the contract to purchase the lease he stopped payment of his $1000 earnest money check and tried to get out of the contract, even offering $5000 cash to be relieved of his bargain. Before performing the contract he compelled White to secure a loan of $20,000 to pay for the lease and White had to pay the excessive brokerage fee exacted for the loan. Then the Flinns became dissatisfied and White was compelled to pay them an additional $500. Boyle admits that he orally gave White an extension of four days from August 15th to the 19th and again a further extension to August 26th. The fact of these two specific extensions is certainly some indication that both parties considered and treated time as of importance. Wimer v. Wagner, 323 Mo. 1156, 1165, 20 S. W. (2) 650, 652. It is certainly inconsistent with a belief that the time limit was to be ignored indefinitely. Annotation 107 A. L. R., 1. c. 405. It will be noted that until the new guaranteed contract of October 1st was executed that none of the agreements absolutely bound White to exercise the option to buy the reversion or suffer a penalty and it must be further noted that he has never offered to do so. In addition, while one of White's lawyers was of the view that the time had been extended he testified that the new option contract was voluntarily and mutually entered into and executed and that White appeared to be completely satisfied with it, including his having escrowed the Howell County land. There are other circumstances corroborative of the respondent's position that the original contract and its specified time had not been extended or waived but the circumstances noted sufficiently illustrate our reasons for agreeing with the trial court's finding against the appellants. The time having expired, it is conceded that there was no duress of property or business compulsion in the new transaction. Compare: Johnson v. Ford and Brown v. Worthington, supra.

Despite the fact that the option contact called for 2000 acres of land the appellant escrowed 2160 acres. As to the excess 160 acres Boyle says that he merely stands on his deed. In effect he tacitly admits that he is not entitled to the 160 acres. The appellants' attorney drew the deed and the appellant, Harry L. White, or one of his agents selected the land to be conveyed from a plat of the 8720 acres of land. By agreeing that $5000 could be substituted for the 2000 acres of land the parties evidently agreed upon a value per acre of $2.50 and White is entitled to recover that sum or the excess 160 acres. Annotation 153 A. L. R. 44. It is not possible to properly dispose of that issue upon the record in this court and as to that issue the cause is remanded for such further action as the parties may

824

deem appropriate; otherwise the judgment as to the 2000 acres is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.