(60 App. Div. 208.)

## VAN DYKE v. WOOD et al.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

**1. DURESS—AVOIDING DEED.**

A husband conveyed to his wife land worth more than her inchoate right of dower in all his lands, in consideration of her agreement to release her dower rights in any lands of his, when requested, without further consideration. Thereafter, judgment of foreclosure having been entered on a mortgage on certain of his lands, and he being unable to pay the mortgage and having sold said lands pending suit, she, with intention to oppress him, to take advantage of his necessities, and to extort from him an unconscionable consideration for releasing her apparent right of dower in such lands, refused to release the same unless he should in consideration convey her certain other lands; and he, compelled by his necessities, yielded. *Held*, that the latter deed to her was procured by duress, and should be set aside.

**2. SAME—PARTIES.**

Where one is entitled to have a deed set aside for duress, a person to whom he conveys, as trustee for the benefit of his creditors, the right of action to recover the premises, may maintain the action.

**3. SAME—OFFER TO MAKE RESTITUTION.**

Where a wife, having already received full consideration for her right of dower, compels her husband by duress to make a conveyance to her as a condition to her releasing her right of dower in certain lands, an

offer to restore to her the right of dower which she released is not necessary to maintenance of action to set aside the conveyance to her.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by Herbert Van Dyke, as trustee, against Virginia Wood, impleaded. From an interlocutory judgment overruling a demurrer to complaint, defendant Virginia Wood appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

W. B. Putney, for appellant.

Francis C. Cantine, for respondent.

RUMSEY, J. The complaint alleges that the appellant and William G. Wood are husband and wife; that on the 1st of November, 1891, at the request of Mrs. Wood, her husband conveyed to her real estate of the value of $300,000 upon the sole consideration and agreement that she would release all her dower rights in any lands owned by him then or at any time thereafter, and would, whenever requested, join in the execution of all deeds and mortgages affecting said lands without any further consideration. It is stated in the complaint that the land thus conveyed to Mrs. Wood was of much greater value than her inchoate right of dower in all of the lands owned by her husband. It is further alleged that on the 9th of December, 1893, Wood was the owner of certain lands in the Twelfth ward of the city of New York, described in the complaint, and which were subject to seven mortgages, amounting in all to $86,000; that one of the mortgages for $30,000 was due and payable, but that Wood was unable to pay it; that on the 1st of July, 1893, an action was pending to foreclose that mortgage; and that the judgment of foreclosure and sale of the property had been entered. It is further alleged that during the pendency of said suit Wood had sold the land for the sum of $124,000, and that in order to complete the sale it became necessary for him to pro cure from Mrs. Wood a release of her inchoate right of dower therein; that on the 1st of December, 1893, he applied to his wife to join him in a deed to the purchaser of the land, releasing her right of dower. It is further alleged that Mrs. Wood, "with intent to oppress said William G. Wood and take advantage of his necessities, growing out of said suit and the imminent danger of his losing said land through the foreclosure and sale thereof, and to extort from him an unconscionable consideration for releasing her said apparent inchoate right of dower in said land, refused to release the same unless the said William G. Wood should, in payment for such release and as a condition precedent thereto, execute and deliver to her" a deed for certain other premises, which were worth at that time about $18,000. It is further alleged that Wood yielded to said demand, being compelled by his necessities to comply with it in order to save the land from foreclosure and sale, and without any other consideration conveyed to Mrs. Wood the premises required by her. It is further alleged that afterwards Wood transferred to the plaintiff, as trustee for the benefit of his creditors, his right of action

against Mrs. Wood to recover these premises. Judgment is prayed that the deed to Mrs. Wood be adjudged void and for other relief. William G. Wood, the husband, is made a party to the action. The demurrer is upon the ground that the complaint does not state facts sufficient to constitute a cause of action. It was overruled by the special term, and from the interlocutory judgment entered upon the decision of that court this appeal is taken.

No question of. the weight of evidence, or of Mrs. Wood's intention or what she wished to accomplish by requiring this deed from her husband, is presented in this case. It is admitted by the demurrer that her intention was to oppress her husband and take advantage of his necessities, growing out of said suit and the imminent danger of his losing said land in respect of which the judgment of foreclosure and sale had been entered, and to extort from him an unconscionable consideration for releasing her apparent right of dower in that land. It is also conceded that Mr. Wood yielded to that demand, being coerced thereto by his wife, and compelled by his necessities to comply with her demand in order to save his property from sale. While these allegations of the complaint are made simply by way of recital of the reasons which induced the action of the parties, yet the demurrer admits them. Sage v. Culver, 147 N. Y. 241, 41 N. E. 513. It is also admitted that Wood was unable to pay the mortgage which was in suit, and upon which the judgment of foreclosure had been entered. It is also admitted that this woman had before then received more than an adequate consideration for her agreement to release her rights of dower, and that she had made an express contract so to do upon being requested. The plaintiff stands in the shoes of Wood, and is entitled undoubtedly to the same measure of relief that Wood would be entitled to if he were the plaintiff in the action. It is claimed that the grantor in the deed to Mrs. Wood is entitled to have it set aside, because it was substantially without consideration, and the appellant took advantage of his pressing necessities to extort the deed from him, and therefore the deed, although made by him, lacked the elements of consent and free will which are necessary to a valid conveyance. The defendant, on the contrary, insists that, although it must be conceded that Wood's necessities were great, and that he was entitled under his contract with his wife to have this deed executed by her without further consideration, and that, although the failure to execute the deed of his land to the purchaser would result in the loss of many thousands of dollars, yet, when that dilemma was presented to him, he was bound either to undergo the loss which he could not prevent, or to submit to whatever extortion the wife saw fit to impose upon him before she would consent to do the thing which for a valuable consideration she had already bound herself to do. It will be seen, therefore, that the only question is whether the deed to Mrs. Wood, given to induce her to release her right of dower in the property sold, was supported by a sufficient consideration, or was made under such circumstances that Wood is not estopped from saying that it was not his free act and deed, and is therefore void.

That Mrs. Wood was bound by her contract to release her dower, and that she had received a full and ample consideration for whatever release of dower she might be called upon to make, stands conceded in the case. No circumstances are suggested which would authorize her to insist upon any further consideration for this particular release, which she was asked to make in December, 1893. There can be no doubt, therefore, that she was not only legally, but equitably, bound to carry out her contract and release her dower when that deed was presented to her for her execution. It is very evident, as is admitted by the demurrer, that if she refused to execute the deed the sale could not be completed, and her husband would lose the large equity he had in the lands subject to the mortgage. In that respect he undoubtedly was not dealing with her at arm's length, but she had him at a disadvantage. This disadvantage was brought about by herself, and not by any one else. He was not in the situation of a person who comes to ask of another a favor, which that other may or may not grant at his will, but for the granting of which he extorts an unconscionable consideration; but he was bound to this woman by a rule of law which was none of his making, but which he had done his best to absolve himself from, and as to which he had relieved himself, unless the woman refused to carry out the bargain she had made. In that respect she stood precisely like any other person who has been enabled by the law to obtain some advantage over another, and who is disposed to press that advantage to the utmost when the necessities of the other permit. It is quite true that upon the facts admitted in this demurrer Wood might have brought an action in equity to compel by his wife the specific performance of her contract to release her dower. It is equally true that, while the judgment in that action might have compelled her to release her dower right, the sale upon foreclosure would have taken place, and the release would then have been of no use. Therefore it appears from all the facts in the complaint that, unless Wood succeeded in getting the release of dower when he asked for it, he would lose his bargain and his land. The only question is whether, although that necessity was such as to compel him to submit to the extortion, he was still legally a free agent as to the deed executed under that compulsion.

The principle upon which men are relieved from their contracts procured by duress has been greatly extended in recent years. In the time of Lord Coke no one would have been permitted to avoid his contract for duress, unless the duress was such as not only to put him in fear of illegal imprisonment or great bodily harm, but went so far as to be something that a man of ordinary firmness would not be able to resist. No possible loss to his land or property would be sufficient to enable him to avoid a contract which he had made to prevent it. Bac. Abr. tit. "Duress," (A). But gradually and by slow degrees the strictness of that rule was abated, until finally it has come to be the rule of law in this country, although perhaps not in England, that where one is presented with the contingency of serious loss or damage to his property or of a submission to an extortionate claim, if he pay the claim or make the contract which is extorted from him, it

is not to be considered a voluntary act, and it may be set aside on the ground of duress. Vyne v. Glenn, 41 Mich. 112, 1 N. W. 997; Harmony v. Bingham, 12 N. Y. 99; Hatter v. Greenlee, 26 Am. Dec. 370, 376, 377, and note.

In the case of Foshay v. Ferguson, 5 Hill, 154–158, it is said by Judge Bronson:

"I entertain no doubt that a contract procured by threats and the fear of battery, or the destruction of property, may be avoided on the ground of duress. There is nothing but the form of a contract in such a case, without the substance. It wants the voluntary assent of the party to be bound by it. And why should the wrongdoer derive an advantage from his tortious act? No good reason can be assigned for upholding such a transaction."

In the case of Sasportas v. Jennings, 1 Bay, 470, it was held that duress of goods will avoid a contract, where an unjust and unreasonable advantage is taken of a man's necessities of getting his goods back into his possession, and there is no other speedy means left of getting them back but by giving a note or bond, or where a man's necessities may be so great as not to admit of the ordinary process of the law to afford him relief. See, also, the case of Collins v. Westbury, 2 Bay, 211.

In the case of U. S. v. Huckabee, 16 Wall. 414, 21 L. Ed. 457, where it was held that the facts did not warrant a finding of duress which would avoid the contract, it was said by Judge Clifford, delivering the unanimous opinion of the court, that to show duress it was not necessary that actual violence was used, becauses consent is the very essence of a contract, and if there be compulsion there is no binding consent. The rule was also recognized that contracts procured by threats of battery to the person or of destruction of property may be avoided by proof of such facts, because in such a case there is nothing but the form of a contract, without the substance.

The same rule is laid down by the text writers. In Snell, Eq. (10th Ed.) p. 562, it is said that circumstances of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, may in like manner justify the court in setting aside a contract made by him, on account of some oppression or fraudulent advantage. The rule as laid down by Mr. Pomeroy is that whenever a person is in pecuniary necessity or distress, so that he would be likely to make any undue sacrifice, and advantage is taken of such a condition to obtain from him a conveyance or contract which is unfair, made upon an inadequate consideration, and the like, even though there be no actual distress or threats, equity may relieve defensively or affirmatively. Pom. Eq. Jur. § 948. Although Mr. Pomeroy says in the note that relief will be granted in such instances with great caution, yet it must be remembered that in the case at bar the facts do not show that Wood acted under such circumstances as would justify the court in refusing him relief, but it is admitted that he was compelled by his necessitous condition to make the contract, and for the reason and no other than that he was driven to make it because this woman intended to oppress him. Whatever may be the proof upon the trial, the facts here appearing are that Mr. Wood was driven to make the

contract, and upon this appeal those facts must be construed favorably for the plaintiff, and for this reason the case is brought precisely within the rules laid down by the text writers.   Judge Story also lays down the rule that circumstances of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, may in like manner so entirely overcome his free agency as to justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it.   1 Story, Eq. Jur. § 239.

The cases cited by the text writers from whose books extracts have been made fully bear out the propositions there laid down. Indeed, where such a proposition is laid down by so great a master of equity as Judge Story, it is hardly necessary to go beyond his statement to show that the rule is established.   But these cases and writings have been referred to, not so much to show that the rule which would authorize the granting of the relief in this case is well established, as to ascertain the principle upon which the rule proceeds; and it is quite clear that this principle does not limit the right of one to avoid his act to a case where the duress involves some element of fear lest harm should be done to the person from whom the contract is extorted or to some other person who is a near relative of that person.   The principle goes further than that. It lays hold of the fact of extortion, and if that fact is established, and there has been added to it the further fact that the person upon whom the extortion is practiced finds himself in such a necessitous condition that, to avoid a greater harm and damage, he must make a contract which is forced upon him, then the element of consent will not be deemed to exist, and the contract will be avoided.

The case of Neilson v. McDonald, 6 Johns. Ch. 201, seems to be practically in point here.   In that case a levy under an execution had been made against the plaintiff's property, which was worth several thousand dollars over the amount of the execution.   The defendants, who were the plaintiffs in the execution, caused a portion of the property to be sold to satisfy the judgment, and it was sold at a very great sacrifice.   They then proposed to sell the remainder, the result of which would have been that, to secure a debt of about $500, property worth many times that amount would be sacrificed.   To induce the judgment creditors to refrain from selling the remainder of the property, the plaintiff made a bond and mortgage, by which he not only agreed to pay his own debt of $480, but he also became responsible for the debts of his son, who was insolvent, to the amount of $1,600, and in consideration of his giving his bond and mortgage for $2,500 for those purposes the property sold was restored to him and the execution was satisfied.   All this was done for the purpose of oppressing him.   No harm was threatened to him personally or to his property.   There is no doubt that an action at law could have been maintained for the conversion of the property and for the damages resulting from the conspiracy of the defendants.   But yet the court held that under those circumstances the whole contract was void, and it was set aside.   It was held that the giving of the bond and mortgage was not a free and

voluntary act, but that he was coerced into it by the distress under which he labored and the ruin that was threatening him. It is quite true that in that case the defendants' conspiracy involved oppression by an officer of the court, but the act which was set aside was that of the defendants, and not of the officer, which was important only because, like the judgment of foreclosure in this case, it made it possible for the defendants to practice an extortion.

The case of James v. Kerr, 40 Ch. Div. 449, is also in point. In that case James, for the purpose of carrying on certain litigation, made a bond to Kerr, by which Kerr agreed to advance whatever money was necessary to carry on the litigation, the result of which was quite doubtful, and to receive his money back, with 5 per cent. interest and a bonus of £225, if the action was successful. The action coming to a successful completion, he was called upon to pay the loan and also the bonus, and it was held that the payment of the bonus was extorted from him by his necessities. Kerr did not stand in any confidential relation to the plaintiff in that action, and nevertheless the court, as one reason for setting aside the bond, held that he was at the mercy of the lender, and was bound to consent to whatever terms he chose to exact, and for that reason it was held that he was entitled to a cancellation of the bond on payment of the money advanced, and that he need not pay the bonus.

The same question was presented in the case of Harmony v. Bingham, 12 N. Y. 99. In that case the plaintiff had shipped a large quantity of goods to Missouri upon the agreement with defendant that they should be delivered within 26 days, with a drawback of a certain sum for each day the delivery was postponed. It was delayed for a considerable time, and the defendant refused to deliver the goods unless plaintiff paid the full amount of the freight, without deducting the rebate, which he did. The court held that the plaintiff, being driven by his necessities to pay the freight in order to obtain the goods, because of the refusal of the defendant to deliver them, was justified in paying the money, and would be permitted to recover it back, and a judgment in his favor for that amount was affirmed. I see no difference in principle between that case and the case at bar.

In the case of Spaids v. Barrett, 57 Ill. 289, an action was brought to recover a sum of money which was claimed to have been extorted from the plaintiff by the defendants. The plaintiff had a large quantity of perishable goods in transportation. The defendants procured an attachment to be levied on the goods, so that the carrier could not deliver them, and to enable the plaintiff to get possession of them he was required to pay to the defendant $2,000 more than he actually owed; and he brought the action to recover back that sum. The defense was that the plaintiff had paid that amount for the purpose of securing possession of his goods and the release of the attachment, and the only question presented to the court was whether the act of the plaintiff in paying that sum for the release was a voluntary act, so that it prevented him from recovering it back under the circumstances. The court held that, although

the only object of his paying the money was to secure possession of his goods, yet as the payment was compelled, because there was no other sufficient remedy for the wrong which had been done him by the defendants, he was entitled to recover it back. It was urged in that case, as it might be here, that there was a perfect remedy at law by replevin, and the court conceded that to be the fact; but it was held that, although there was that remedy at law, yet, as it was necessary for the plaintiff to get possession of the goods needed for his business, he was not restricted to that remedy, and, having submitted to the extortion, he was at liberty to recover back the money.

I can see no reason why this case is not on all fours with the cases cited. There was no consent on the part of Wood to make this deed. His apparent consent was extorted by this woman, because of the absolute necessity under which he was, and it seems to me that it would be a disgrace to the courts if such a transaction should be permitted to stand.

It is said that the complaint is defective for the reason that there is no offer to restore the right of dower which Mrs. Wood released; but there is no necessity for that in this case, because she had already received full compensation for the release of her dower rights, and she admitted the fact by her demurrer.

Upon the whole case it seems to me that the plaintiff states a good cause of action, and for that reason the judgment appealed from should be affirmed, with costs, with leave to the defendant to withdraw her demurrer and answer within 20 days, upon payment of costs in this court and in the court below.

O'BRIEN and HATCH, JJ., concur.

INGRAHAM, J. I do not concur with Mr. Justice RUMSEY. There was no relation of trust and confidence between the parties. William G. Wood sought to obtain his wife's release of her right of dower in certain premises owned by him; she having made an agreement to release all her dower rights in his lands. She refused to execute such a release unless the said William G. Wood would execute a conveyance of certain other lands described; and he, yielding to such demand, and coerced by his said wife, and compelled by his necessities to comply with the said demand, conveyed the last-mentioned land to the said Virginia Wood. I do not think that this is sufficient to sustain a finding that the conveyance was procured by duress. The question as to what action constitutes such duress as to justify a court of equity in upsetting an executed contract has been much discussed; but it must, I think, be considered settled that the execution of an instrument, "unattended by any acts of violence or threat of any kind calculated in any degree to intimidate the party, or to force the result, or to compel that consent which is the essence of any valid contract," is a voluntary act, and the instrument cannot be avoided on the ground of duress. The fact that the party did consent, though reluctantly, makes the instrument binding, and he must abide the consequences of his

voluntary act. French v. Shoemaker, 14 Wall. 333, 20 L. Ed. 856.

Assuming that the husband had a right to disaffirm that transaction and procure a reconveyance of the land, on the ground that he was coerced into making the transfer, it is to me quite clear that he would only be entitled to such a reconveyance by restoring the other party to the contract to the position in which she was at the time the conveyance was executed, namely, giving back to her the consideration which induced her to execute a release of her inchoate right of dower. Before William G. Wood or his assignee could disaffirm the agreement and recover back the property conveyed, he was bound to restore to the defendant Virginia Wood her inchoate right of dower in the Third avenue property. That he has failed to do, and has put it out of his power to do. Whatever her rights were in that property, she was entitled to be put in the same position that she was before her husband executed the conveyance which the plaintiff now seeks to avoid. The wife was not bound to accept a gross sum as the value of her inchoate right of dower. She was entitled to have that inchoate right of dower preserved to her intact, and it seems to me that the husband should not be entitled to a reconveyance of the property which he had conveyed to his wife as a consideration for her release of her right of dower, except upon putting her in the same position that she was prior to the execution by her of her release of dower.

The case of Carpenter v. Carpenter (Sup.) 10 N. Y. Supp. 486, relied on by the plaintiff, is not in point. That was an action for the specific performance of a contract to convey property worth $7,000. The sole consideration of the contract was the execution by the plaintiff of a mortgage for $2,000, by which she subjected her dower right to the lien of a certain mortgage. Her inchoate right of dower could not exceed in value a few hundred dollars; and the husband in this case offered to pay off the mortgage, which would restore the plaintiff to the same right that she released by joining with her husband in the execution of the mortgage. The court held that, in view of the consideration and the circumstances under which the contract was made, it would be inequitable to specifically enforce the agreement, especially as, by the defendant's offering to pay off the mortgage, the plaintiff was restored to her rights which she lost by joining with her husband in its execution. This is not a case where the person who procured the conveyance sought to be set aside made any claim against the defendant's property, or threatened to take action against the defendant which would subject him to any penalty or forfeiture. There was no duress, within the ordinary meaning of that term. The appellant simply had an interest in that property which she refused to release. She threatened to take no affirmative action, and in fact made no threat of any kind. She had an interest in this property. To release that interest she required a payment of a consideration; and the husband, with full knowledge of that fact and for his own advantage, agreed to pay her a consideration for the relinquishment of her interest. That she insisted upon a hard bargain may be conceded, but the transaction was entirely voluntary by the husband,

without threat or duress of any kind, except that he wanted the appellant's property.

But there is another ground which seems to me to present an insurmountable obstacle to the plaintiff's recovery, and that is that by keeping and using the right which he acquired from his wife he recognized the validity of the contract under which the conveyance to her was made, and by failing to avoid the contract within a reasonable time after the removal of the duress he ratified and recognized the validity of the agreement under which this conveyance was made. The principle of ratification is stated in 10 Am. & Eng. Enc. Law (2d Ed.) p. 337, as follows:

"Where it is sought to avoid a contract because induced by duress, the person seeking such avoidance must proceed within a reasonable time after the removal of the duress. If he remains silent for an unreasonable length of time, or if he keeps property which he may have acquired under the contract, or recognizes the validity of it, either by making payments thereon or otherwise, he will be held to have elected to waive the duress and ratify the contract."

And the cases cited in the note seem to be uniform in holding that a delay of three years in avoiding the contract, unexplained, was sufficient to ratify the deed.

In the case of Railroad Co. v. Forrest, 128 N. Y. 83, 28 N. E. 137, it was held that a delay of six years in repudiating the agreement, and paying interest upon the bonds which the plaintiff alleged had been extorted from it, was a ratification of the contract, and that it was too late to claim that the bonds had been obtained by duress; the court saying:

"One entitled to repudiate a contract on the ground of duress should, like one who attempts to repudiate a contract on the ground of fraud, act promptly."

The complaint here alleges that on December 1, 1893, the defendant William G. Wood applied to the defendant Virginia Wood to join with him in the execution of a deed of certain lands described, whereby she would release her apparent inchoate right of dower therein; that she refused to release the same unless he, in payment for such release and as a condition precedent thereto, should "execute and deliver to her, said Virginia Wood, the following described land and premises," which the said William G. Wood conveyed to the defendant Virginia Wood; the conveyance thereof being recorded on December 12, 1893. There is no allegation that the defendant William G. Wood ever repudiated this arrangement, or ever sought to obtain a reconveyance of the lands. On April 23, 1896, he executed a contract by which he sold and assigned to the plaintiff a claim for restitution of real property, or the value thereof, against one Virginia Wood. This was more than three years after the alleged duress, and this action was not commenced until December 5, 1899, almost six years after the removal of the duress. In all the authorities cited in the note to 10 Am. & Eng. Enc. Law (2d Ed.) p. 337, to which attention has been called, a very much shorter period than six years was a bar to granting the plaintiff any relief.

But I do not think that the plaintiff can maintain this action. It is a general principle, well settled, that a contract made under

duress is only voidable, and not void, because it may be either rati-
fied or affirmed by the party upon whom the duress was imposed.
If that is so, the right to disaffirm a contract which is void because
of duress is a personal right, vesting in the person upon whom the
duress has been imposed, and he only can avoid it. Railroad Co.
v. Forrest, supra. In this case, so far as appears, the person upon
whom the duress was imposed never elected to avoid this contract.
He has attempted to transfer to the plaintiff a claim for restitution
of real property, or the value thereof, upon one Virginia Wood;
but he has himself never elected to rescind, and I do not think the
plaintiff in this action can elect for him, and, under such a trans-
fer, recover. I think the judgment should be reversed.

VAN BRUNT, P. J., concurs.