BACHTEL, APPELLANT, *v.* BACHTEL, APPELLEE.

(No. 4740—Decided February 8, 1954.)

*Messrs. Burns & Kiroff,* for appellant.
*Mr. Allen J. Conkle,* for appellee.

FESS, J. This cause is here on appeal on questions of law and fact from an order of the Juvenile Court finding plaintiff-appellant unfit to have custody of two minor children, aged eleven and nine years; awarding their custody temporarily to the Child and Family

Agency for placement in a foster home; and further ordering plaintiff to pay $20 per week for the support and maintenance of such children.

Notice of appeal on questions of law and fact was filed, and defendant-appellee moves to dismiss the appeal on the ground that the plaintiff failed to file a bond as required by Section 8005-7, General Code (Section 3109.07, Revised Code). Section 8005-7, General Code, had its origin in the act of April 14, 1893 (90 Ohio Laws, 186). It was included in Bates' Annotated Ohio Statutes as Section 3140-1 and in the Ohio General Code as Section 8035. The word, appeal, as used in the statute, meant an appeal as distinguished from a petition in error, and in conformity with the procedure generally upon appeal, provision for a bond was made. After the adoption of the 1912 amendment of Section 6, Article IV of the Constitution, the Court of Appeals had only such jurisdiction as was conferred by that amendment and had no jurisdiction to entertain an appeal from an order relating to the custody and support of children. *West* v. *West,* 100 Ohio St., 33, 124 N. E., 888. As in the case of Section 12002, General Code, Section 8035, General Code, purporting to confer jurisdiction, was ineffective. Cf. *Marleau* v. *Marleau,* 95 Ohio St., 162, 164, 115 N. E., 1009.'

But effective January 1, 1945, Section 6 of Article IV was again amended to read:

"The Courts of Appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procendendo, *and such jurisdiction as may be provided by law* to review, affirm, modify, set aside, or reverse judgments or final orders."

In *Youngstown Municipal Ry. Co.* v. *City of Youngs-*

'However, in *Bower* v. *Bower,* 90 Ohio St., 172, the Supreme Court had previously held that an appeal could be taken under Section 8035.

*town,* 147 Ohio St., 221, 70 N. E. (2d), 649, the Supreme Court held that until there is legislative action which effects a change, the appellate jurisdiction of the Courts of Appeals remains as it was at the time the 1944 amendment was adopted. As in the case of Section 12002, General Code, Section 8035, although it remained in the General Code, is of no effect. Cf. *Jelm* v. *Jelm,* 155 Ohio St., 226, 237, 98 N. E. (2d), 401. But Section 8005-7, General Code, was enacted in 1951, after the adoption of the 1944 amendment. Without designating whether it is an appeal on questions of law or on questions of law and fact, it provides for an appeal to a ''higher'' court upon the appellant's giving bond approved by the court from whose decree the appeal is taken. Since the Court of Appeals is one of the so-called ''higher courts,'' jurisdiction is thereby conferred upon the Court of Appeals to entertain this appeal. Section 12223-1, General Code (Section 2505. 01, Revised Code), provides that the word, appeal (as used in the Appellate Procedure Act), shall be construed to mean all proceedings whereby one court reviews or retries a cause determined by another court, an administrative officer, tribunal or commission.

In enacting Section 8005-7, General Code, the Legislature made no distinction between an appeal on questions of law and an appeal on questions of law and fact. Notwithstanding the provision for a cost bond on the appeal, it is difficult to conceive that the Legislature intended to afford the contending parties a trial *de novo* in the Court of Appeals in custody cases which involve no chancery jurisdiction. Having failed to denominate the appeal as one on questions of law and fact, we conclude that the appeal referred to in the section is one on questions of law only.

Section 12223-3, General Code, contemplates that every final order, judgment or decree of a court may

be reviewed as provided in the Appellate Procedure Act, unless otherwise provided by law. Section 8005-7, General Code, provides no manner of review, nor is any time fixed for filing notice of appeal or the giving of bond. We therefore apply the provisions of the Appellate Procedure Act in the determination of the motion to dismiss the appeal. Section 12223-6, General Code, provides that no appeal shall be effective as an appeal on questions of law and fact unless and until a supersedeas bond is filed at the time the notice of appeal is required to be filed. But if a case can not be heard as an appeal on questions of law and fact because no appeal bond has been filed, the appeal is not dismissed but stands for hearing as an appeal on questions of law. *Bauer* v. *Grinstead,* 142 Ohio St., 56, 50 N. E. (2d), 334. The appeal designated as one on questions of law and fact is therefore dismissed, the motion to dismiss the appeal overruled, and the appeal retained for review on questions of law under the provisions of the Appellate Procedure Act upon the transcript of the docket and journal entries and bill of exceptions previously filed herein. The notice of appeal is amended to designate the orders of the court entered June 12, 1953, and June 22, 1953, as the orders from which the appeal is taken, instead of the order of July 28, 1953, overruling the motion of the plaintiff for a new hearing.

The plaintiff and the defendant were married in 1941 and are the parents of the two children involved in this proceeding. Upon their divorce in March 1946, custody of the children, then four and three years of age, was awarded plaintiff and defendant was ordered to pay $40 per month for the support of the children. The cause was certified to the Juvenile Court for further proceedings. Defendant testified he had paid $798 pursuant to such order, but in February 1951,

plaintiff was awarded a judgment in the sum of $1,372 for arrearage in payments. Defendant was purged from contempt, presumably because of inability to pay on account of mental and physical illness.

On June 20, 1952, defendant filed a motion for modification of the custody order of March 26, 1946, which, after a hearing and report of a referee, was dismissed on October 7, 1952. From the report of the referee, it appears that defendant refused to participate in the hearing because of the ruling of the referee excluding evidence of conduct prior to the divorce.

On April 2, 1953, defendant again filed a motion to modify the support and custody order, in which motion he recited that on October 7, 1952, the court had entered the order denying his motion for custody and alleging that since such date there had occurred a substantial change in circumstances and that he had further evidence of neglect of the children by the mother.

This motion came on for hearing on June 12, 1953. Defendant ineptly attempted to support his motion without benefit of counsel. The court consistently sustained objections relating to any misconduct on the part of the plaintiff prior to October 7, 1952. Defendant failed to produce any evidence to support a finding that plaintiff was unfit to have custody of the children and at the conclusion of his examination plaintiff's counsel moved to dismiss the motion. Thereupon the following transpired:

''The court: He hasn't rested yet. You see, Mr. Burkhart, the custody and welfare of children is involved here, and the court, in a recent hearing with which you are perfectly familiar through your law partner, Mr. Burns, has gone over the matter of the fitness of Mrs. Pettigrew at this time, to have custody of John, and it stands to reason that if the court has found her—which it has—unfit to have the custody of

John, the same thing goes with reference to Mary and Harry. So, in order that you may have the benefit of the information which the court has about Mrs. Pettigrew, the court is introducing and receiving into this hearing the record in the Pettigrew case, for the purpose of appeal.

"Mr. Burkhart: I would like to enter an objection to that.

"The court: With that you rest your case, I take it, Mr. Bachtel?

"Mr. Bachtel: Yes.

"The court: You may proceed, Mr. Burkhart."

Upon this appeal, error is assigned to the introduction and consideration by the court of the record in the Pettigrew case over objection of the plaintiff.

In determining whether improperly admitted and potentially prejudicial evidence prejudices an appellant or whether substantial justice has been done, a reviewing court should not weigh the other evidence or determine the credibility and effect of conflicting evidence, unless the weight, credibility and effect of that evidence is substantially in favor of the appellee. *Hallworth* v. *Republic Steel Corp.*, 153 Ohio St., 349, 91 N. E. (2d), 690.

The mere fact that testimony has been given in a former proceeding between parties to a case on trial is no ground for its admission in evidence. Testimony given at a former trial is mere hearsay. Cf. 20 American Jurisprudence, 579, Section 686. It is definitely established that the admission of hearsay evidence requires reversal, unless it manifestly appears that its admission could not have prejudiced the party against whom it was offered. *James Wilson & Co.* v. *Barkalow*, 11 Ohio St., 470; *Sherer* v. *Piper & Yenney*, 26 Ohio St., 476.

The Supreme Court will take judicial notice of the

record in a case previously before it involving the same subject matter and party. *State, ex rel. Galloway,* v. *Industrial Commission,* 115 Ohio St., 490, 154 N. E., 736; *Hughes* v. *County Board of Revision,* 143 Ohio St., 559, 56 N. E. (2d), 63. But the Common Pleas Court may not take judicial notice of a former action in the same court and what may have occurred therein even though the trial judge may have presided in the other case. *Myers* v. *State,* 46 Ohio St., 473, 22 N. E., 43; *Hamilton* v. *Ohio State Bank & Trust Co.,* 20 Ohio App., 493, 496, 152 N. E., 731; *Burke, Exrx.,* v. *McKee,* 30 Ohio App., 236, 238, 164 N. E., 776; *Foltzer* v. *City of Cincinnati,* 70 Ohio App., 127, 36 N. E. (2d), 192; *Wainscott* v. *Young,* 74 Ohio App., 463, 466, 59 N. E. (2d), 609; *Opperman* v. *Opperman,* 77 Ohio App., 69, 65 N. E. (2d), 655 (former divorce proceeding between different parties in the same court); *Ward* v. *Ward,* 90 Ohio App., 108, 103 N. E. (2d), 582.

An exception to the rule excluding hearsay is provided in Section 11496, General Code (Section 2317.06, Revised Code), but under that section a party seeking to introduce former testimony of absent witnesses must show valid excuse for nonproduction of such witnesses. *New York Central Rd. Co.* v. *Stevens, Admr.,* 126 Ohio St., 395, 185 N. E., 542, 87 A. L. R., 884. Furthermore, the testimony introduced upon the hearing in the instant case was not taken in a case involving the same parties. It is recognized that the application of the rule of exclusion to the instant proceedings is technical and unrealistic, since the trial court as well as the members of this court are fully apprised of the conduct of plaintiff, disclosing her to be unfit to have custody of these children. Nevertheless, established rules of procedure must be respected, and a failure to comply therewith constitutes error prejudicial to the complaining party. We have reviewed the provisions

of the Juvenile Court Act to ascertain whether a more liberal rule with respect to the introduction of evidence is provided, and find none. This proceeding was not one involving dependent or neglected minor children. Hard cases make bad law, and to approve an exception to the hearsay rule in the instant case could well open the door to admission of testimony in other cases to the serious detriment of litigants. The judgment must therefore be reversed and the cause remanded for a new trial.

Since the cause is to be remanded for a new trial, we volunteer the following comment. We have recently had the disagreeable task of reviewing the record upon appeal in the *Pettigrew case* and have considered it upon the instant appeal in determining its prejudicial character.

It reveals that plaintiff was remarried to one Samuel H. Pettigrew on July 27, 1946, and one child, John Pettigrew, was born as the issue of this second marriage, on January 31, 1947. On June 19, 1953, a petition for divorce of the plaintiff, Mary Pettigrew, was dismissed and upon the cross-petition of Samuel H. Pettigrew, Mary was found guilty of gross neglect of duty and a divorce was granted. Without specifically finding that either parent was unfit to have custody of the child, the judgment ordered that the custody be awarded the Child and Family Agency for placement in a foster home and that the defendant, Samuel, pay the sum of $10 per week for the support of the child John Pettigrew. The record in the *Pettigrew case* discloses pitiably sordid conduct on the part of the plaintiff and the defendant. They are endowed with more than average education and intelligence, but during their marriage participated in organizations later discovered to be subversive in character. Each of them disclaimed membership in the Communist Party.

Upon the appeal from the judgment entered in the *Pettigrew case*, it was intimated that the action of the trial court was influenced by plaintiff's participation in these organizations. In the record in the *Bachtel case*, the court remarked:

"Mr. Burkhart, one thing that has happened since October 7, 1952, is that Mrs. Pettigrew has been divorced from Mr. Pettigrew, and the court has learned through the trial that went on two or three days, I forget how long, of her, shall we say, 'pink' tendencies, her pink affiliations or connections."

That a parent may be a fellow traveler is insufficient to support a finding that such person is unfit to have the care and custody of a child. But the record discloses the vicious result of flirting with communist philosophy. Although intelligent and well educated, there resulted a breakdown in observance of moral standards and rectitude which afforded a basis for awarding custody of the child to the Child and Family Agency. Nor can criticism be directed to proper affiliation with members of another race in the interest of promoting racial tolerance and good will. But the record reveals that the plaintiff surreptitiously entertained members of the opposite sex and another race at night in her home. Under such circumstances, extra-marital relations by a wife, whether it be with her own or that of another race, imports conduct revealing unfitness to have custody of minor children. After reviewing the record in the *Pettigrew case,* we promptly affirmed the judgment.

As above indicated, objections were sustained to the introduction of any testimony concerning the conduct of the plaintiff prior to October 7, 1952. We agree with the salutary rule announced in *Rauth* v. *Rauth,* 73 Ohio App., 564, 57 N. E. (2d), 266, and *White* v. *White,* 77 Ohio App., 447, 66 N. E. (2d), 159, that in a

hearing on a motion to modify an order awarding custody of a child, evidence tending to show unfitness of the custodian, at or before the time such award was made, is not admissible and that only evidence of unfitness of the custodian since the time of the award may be introduced. The best interests of the children as well as the parents require that the matter of custody of minor children should not be reopened and the controversy renewed unless there has occurred a substantial change in circumstances since the original award. But in the instant case, the defendant misnamed the order which in reality he sought to modify. Merely because he failed to secure modification upon his 1952 motion does not require exclusion of testimony disclosing misconduct between the time of the original award and the time his previous motion was dismissed. It is evidence of conduct at and prior to the time of the original order of March 1946, that is to be excluded under the rule.

We also feel impelled to make this further comment. Section 8002-3, General Code (Section 3103.03, Revised Code), provides that the husband must support himself, his wife, and his minor children out of his property or by his labor. Section 8005-3, General Code (Section 3109.03, Revised Code), provides that when husband and wife are divorced and the question of the care, custody and control of their offspring is brought before a court, they shall be upon an equality as to the care, custody and control of such offspring, as far as parenthood is concerned. But Section 8005-3, General Code, does not relieve the father of his primary obligation to support his minor children as required by Section 8002-3, General Code. The liability of the father to support his minor children is primary and that of the mother secondary, and the mother is not required to support such children unless the father is

unable to do so. *Kintner* v. *Kintner*, 78 Ohio App., 324, 65 N. E. (2d), 156. Cf. *Mark* v. *Mark*, 145 Ohio St., 301, 316, 61 N. E. (2d), 595, 160 A. L. R., 608; *Tullis* v. *Tullis*, 138 Ohio St., 187, 191, 34 N. E. (2d), 212.

The record reveals that defendant wholly lacks parental responsibility. He is a doless drone affected with hypochondria which has thwarted gainful employment. We realize that the Juvenile Court is all too frequently confronted with these slothful pariahs of society, but upon rehearing we respectfully suggest that before relieving defendant from his primary obligation of support he be required to show his inability to do so upon competent evidence, rather than to relieve him upon his uncorroborated statement of his inability, evidenced by his failure to comply with the order of the court.

A persuasive inference arises from the record that defendant is not motivated by affection or any real desire to protect the welfare of his children, but is actuated by vindiction toward his ex-wife. His effrontery is exhibited by his unwillingness to support his children and at the same time he urges that they be removed from the care and custody of their mother but at her expense—not his. It may be further observed that his condition of health was not so poor as to prevent him from spying, night after night, upon the peregrinations of Mary Pettigrew in obtaining evidence to be presented by Sam Pettigrew at the trial of his divorce action. At the risk of effrontery on our part, we respectfully suggest consideration should be given toward finding defendant in contempt and commitment to the house of correction for failure to comply with his obligations to support his children and the order of the court to that end. A period of forced employment might be conducive to relieving him from a

532

delusion that he is unable to meet his parental obligations.

With considerable regret, the judgment is reversed and the cause is remanded to the Juvenile Court for further proceedings.

*Judgment reversed.*

CONN and DEEDS, JJ., concur.