THE WEINMAN PUMP MFG. CO., APPELLANT, *v.* CLINE, APPELLEE.*

(No. 6439—Decided October 31, 1961.)

*Messrs. Earhart, Robertson & Savage,* for appellant.
*Messrs. McLeskey & McLeskey,* for appellee.

DUFFY, J. The plaintiff, appellant herein, a manufacturing concern in the city of Columbus, was having part of its property

*Motion to certify the record overruled (37406), March 28, 1962.

appropriated for inclusion in an expressway project, and it entered into a contract with the defendant, appellee herein, to purchase property owned by him.

The plaintiff states this property ''* * * was and is situated immediately west of other lands owned by the plaintiff and was situated approximately in the center of an area which the plaintiff was under great need and compulsion to acquire if it was to continue in business at its present location, * * *.''

According to the plaintiff, there had been extended negotiations from August 1954 until December 12, 1955, when the defendant executed and placed in the hands of a real estate broker an offer in writing, signed by the defendant, proposing to sell the premises to the plaintiff for the sum of $8,000. The offer was accepted in writing by the president of the plaintiff corporation on December 20, 1955. When the abstract of title was delivered it was disclosed that defendant's title was not merchantable by reason of ''certain readily correctable defects,'' which the defendant attempted to correct by an action to quiet title in the Court of Common Pleas of Franklin County, Ohio. The final judgment quieting title was entered on or about August 14, 1956.

It is alleged also that after repeated requests that the defendant expedite the completion of the contract for the sale, plaintiff commenced an action for specific performance of the contract on December 19, 1956, and after filing the action the defendant disclosed for the first time that he was a married man; and, although the contract of sale required him to deliver a deed with release of dower, he did not deliver a deed with such release and thereby frustrated the plaintiff's title unless an additional sum of money was paid. Although the original contract called for a purchase price of $8,000, the plaintiff alleged that it was ''compelled to accede to defendant's demand that he be paid $15,000 to obtain delivery of a deed signed by himself and his wife, and did in fact, on or about February 18, 1957, pay such amount and obtain such conveyance.''

Plaintiff then filed this action to recover the $7,000 over and above the agreed contract price, and damages of $10,000 due to expense and loss caused by increases in the costs of construction and the movement of equipment which resulted from de-

fendant's "wilful refusal and delay, to complete his duly contracted obligation."

The plaintiff states in its brief that this case brings into focus the doctrine referred to as "business compulsion," which it feels has been recognized by the Ohio courts, although the term has not been referred to specifically in any of the Ohio cases. Plaintiff refers also to the general rule stated in 18 Ohio Jurisprudence (2d), 487, Section 7, wherein it is stated:

"The early common-law doctrine of duress has gradually expanded and broken through its original limitations, with the result that the doctrine of 'business compulsion' has been adopted or recognized in many states in this country. Broadly speaking, 'business compulsion' is a species of duress, not the common-law duress to be sure, but duress clothed in modern dress. It seems to be established as a general rule, at least in this country, that the payment of money or the making of a contract may be under such circumstances of business necessity or compulsion as will render the same involuntary and entitle the party so coerced to recover the money paid, or excuse him from performing the contract. But 'business compulsion' is not established merely by proof that consent was secured by the pressure of financial circumstances. The fear of some impending peril or financial injury, or the mere fact that one acts with reluctance, does not constitute duress. It must be such a threat that, in conjunction with other circumstances and business necessity, the party so coerced would fear a loss of business unless he does so enter into the contract as demanded."

The plaintiff also cited the cases of *Administrators of Hough* v. *Hunt*, 2 Ohio, 495, 502; *Peters, Richter & Co.* v. *Railroad Co.*, 42 Ohio St., 275; *Alms & Doepke Co.* v. *Young*, 20 Ohio Law Abs., 325; *Rosenberg* v. *Callam*, 37 Ohio Law Abs., 9, as supporting its contention that the "business compulsion" doctrine has been recognized by the Ohio courts.

The trial court sustained a demurrer to the petition, and a demurrer to the amended petition, and in both rulings the trial judge doubted that the doctrine of "business compulsion" was recognized in Ohio. However, he sustained the demurrers on the ground that the plaintiff had the choice of proceeding with its action in specific performance, under which action it could have obtained a deed from the husband but could not have com-

pelled the wife to release her dower (*Grundstein* v. *Suburban Motor Freight, Inc.*, 92 Ohio App., 181); that it was the inability to compel the release of dower which put the plaintiff in this dilemma rather than any "business compulsion"; that the additional amount of money was paid to obtain the wife's signature, she not being a party to the original contract of sale. The trial judge thought that it was inconsistent for the contract to call for a release of dower and for the plaintiff to assert that it did not know that the seller was married. (See *Findley* v. *Davis, Jr.*, 100 Ohio App., 316.) Since plaintiff obtained more (signature of defendant's wife) than it could have obtained had it continued to prosecute the action for specific performance, it would appear that the action of the trial court was correct and the judgment will be, and hereby is, affirmed.

*Judgment affirmed.*

BRYANT, J., concurs.

DUFFEY, P. J., dissenting. This case is before the court on an appeal from the sustaining of a general demurrer to the amended petition. The pertinent allegations are:

The plaintiff-appellant, The Weinman Pump Manufacturing Company, is a manufacturing concern. In August 1954 the northern boundary of its plant site faced on Goodale Street in Columbus. The western boundary abutted a row of lots held in residential use. The defendant-appellee, B. F. Cline, owned a lot in about the middle of this row, improved with a small multiple dwelling house. At that time plans for the construction of an expressway were publicly known. The right of way would impinge substantially on the industrial site. Plaintiff thereupon commenced negotiations with the defendant to purchase his property, "clearly disclosing its interest." The property was desired for the purpose of relocating and reconstructing its foundry and other manufacturing facilities. The petition does not specifically allege that the appellant acquired the other lots in the row, but this is implied by the allegation that although they were not owned by appellant at that time, they are now held by appellant.

"After extended negotiations" the appellee executed an offer to sell, which was properly accepted by appellant on De-

cember 20, 1955. The pertinent terms were a price of $8,000, vendor to furnish "merchantable title in fee simple" (subject to exceptions not relevant here) and to convey "by deed of general warranty with release of dower." Performance was due in ten days (December 30, 1955).

Certain defects of title were discovered in examining the abstract, and the purchaser requested the vendor to clear them. The vendor commenced an action to quiet title and obtained a final judgment on August 14, 1956. In the meantime (June), the city notified the purchaser that its property would be needed shortly. The city's "stringency" with respect to occupation of the right of way was given "wide newspaper publicity."

After the defects were thus cleared, the purchaser requested the vendor to perform. The purchaser was ready, able and willing, but the vendor "evaded and avoided" performance and demanded a sum of money in addition to the contract price, although that was "far in excess of the actual value." On December 19, 1956, the purchaser commenced an action for specific performance. The vendor then, for the first time, disclosed he was married. Despite the contract, he *"would not"* deliver a deed with release of dower *"unless* an additional sum of money was paid." The amount demanded was $7,000, or a total of $15,000.

The purchaser was under "urgent pressure" because of the pending appropriation of "vital portions of its plant" and, further, because a "lack of or delay in construction" of its relocated facilities would force a shutdown of its operations. These operations involved over $1,000,000 gross annual product and utilized highly skilled personnel. Because of this need, the purchaser acceded to the demand of the vendor, paid the $15,000 to the vendor and obtained a conveyance with the release of dower on February 18, 1957.

Finally the purchaser alleges that the refusal of and resulting delay in performance caused $10,000 damages in increased cost of construction and movement of equipment. The prayer is for the recovery of the $7,000 payment and the $10,000 damages.

The petition alleges two interconnected but distinct transactions and contains two causes of action. While the causes should have been separately stated, that point is not pertinent

to the ruling on this demurrer. With respect to the basic transaction, the petition alleges all the elements of a cause of action for special damages based on a breach of contract arising from late performance.

The existence and terms of the contract are sufficiently alleged. The contract time for performance was December 30, 1955. The allegation of a request by the purchaser to correct the defects in title is at most a waiver or extension of the time for performance. However, that waiver would not extend beyond a reasonable time after the defects were cleared. Final judgment quieting title is alleged to have been obtained on August 14, 1956. (In view of the fact that the abstract was allegedly previously supplied, and considering the ten days' closing provision in the contract, a reasonable time would appear to be approximately ten days after August 14, 1956.) The petition alleges that the purchaser thereupon demanded performance, alleges the purchaser's ability and willingness to perform, and the seller's delay and subsequent outright refusal to perform for a period exceeding six months (August 14, 1956 through February 18, 1957). The petition specifically alleges special damages caused by this delay in performance. In view of the seller's alleged knowledge of the nature of the purchaser's business, and of its need for occupancy, it cannot be said, as a matter of law, that those special damages were not within the reasonable contemplation of the parties.

The question is, therefore, whether on the face of the petition the other allegations show, as a matter of law, a bar or other defense to this cause of action in special damages. As appellee has pointed out, these allegations do suggest that there may be a substantial number of possible defenses. However, none of these defenses sufficiently appear on the face of the petition and cannot justify the sustaining of a general demurrer.

Certainly the mere fact that performance did occur on February 18, 1957, does not of itself establish a bar to a damage action based upon *late* performance. Acceptance of a deed "merges" or fulfills the contractual obligation to *convey*. But it does not of itself fulfill the promise with respect to the time of performance and, therefore, that promise does not merge in the deed. A contract merges only to the extent that the deed is a performance of the contract obligations, or to the extent

that the parties intended to do so. *Reid* v. *Sycks* (1875), 27 Ohio St., 285, at 291. See, also, *Conklin, Trustee,* v. *Hancock* (1903), 67 Ohio St., 455; *Galvin* v. *Keen* (1954), 100 Ohio App., 100.

Nor does the allegation of the commencement of an action in specific performance operate to destroy the cause of action for special damages. A damage action on the contract for *non*-performance (as opposed to late performance) and an action for specific performance are alternative remedies, and the plaintiff may be required eventually to elect. But the cause of action here is for special damages arising from the failure to perform at the time required. These damages are recoverable either as part of a general damage action at law on the contract, or in equity incidental to a specific performance action. They are in furtherance of, and an affirmation and enforcement of, the contract and consistent with a specific performance action.

The only fact alleged in the petition is that the specific performance action was commenced. That allegation suggests that the present suit is a splitting of the cause of action. However, such an objection must be raised by *special* demurrer. It cannot be raised by general demurrer. Sections 2309.08 and 2309.09, Revised Code. Obviously, too, the *disposition* of that case, if any, may raise affirmative defenses to the present action. But on demurrer neither this court nor the trial court can take judicial notice of the pleadings or judicial action taken in that specific performance suit, even though that suit was brought in the same court and presided over by the same judge. *Bachtel* v. *Bachtel* (1954), 97 Ohio App., 521, and cases cited therein at page 527. See, also, 21 Ohio Jurisprudence (2d), 74, Evidence, Section 61.

Finally, the mere allegation of the payment of $7,000 and the conveyance of the property does not establish an accord and satisfaction or settlement of this particular breach of contract. There are simply no facts alleged from which this court can find on the face of the petition that the breach has been waived or the cause of action otherwise lost. Accordingly, the petition states on its face a good cause of action for damages based on breach of the preliminary contract by late performance. The court, therefore, erred in sustaining the demurrer.

The appellant contends that the petition states a cause of

action with respect to the second transaction alleged (payment of $7,000 in excess of the contract price).

In considering this contention it should be noted the wife of the vendor was not a party to the contract, or to the payment of the $7,000. A payment to her, or perhaps even to the vendor for her, would itself be a valid transaction based on adequate consideration. As against her the purchaser had no right to the conveyance of her interest, there being no allegation here of collusion or fraud with the vendor. However, we are not concerned on this petition with any question of the purchaser's rights against her. The petition alleges that the vendor demanded the additional sum and that it was paid to him.

The vendor contracted to provide "merchantable title in fee simple." An outstanding dower interest destroys merchantability. It was, therefore, appellee's obligation under the contract to procure a release of dower or take any other steps necessary to enable him to provide the title promised.

However, while a merchantable title was promised, the contract also promised to convey that title by "warranty deed with release of dower." Appellee contends that this provision charged the purchaser with notice that the vendor was a married man and cites *Findley* v. *Davis, Jr.* (1955), 100 Ohio App., 316. The court there, in dictum, stated that such a provision "admits inferentially" that the purchaser knew that the vendor was married. It seems equally reasonable to infer from the provision that the purchaser believed the vendor was not married and was taking extra precautions against a subsequent marriage. In any event, the petition here specifically alleged that the purchaser did not know of the vendor's marriage until two years after the execution of the contract. The inference suggested in the *Findley case* obviously cannot be made in the present case.

The majority opinion intimates that even though a clear title was promised, appellee is excused from performance so far as dower is concerned.

The petition alleges that the vendor "would not" obtain the release "unless" the excess payment was made. Neither specifically or inferentially is it indicated that the vendor *could not* obtain the release and, of course, he did in fact obtain it after being paid his unlawful demand. In any event, a vendor who

knowingly contracts to sell more than he owns assumes the obligation of obtaining the property promised by the time performance is due. He is not excused from performance simply because the person holding the title or an outstanding interest refuses to convey. Inability to perform in that sense is a breach of contract for which he is liable in a damage action or by an abatement in a specific performance action. See, for example, *Findley* v. *Davis, Jr., supra.*

As noted in the discussion of the first cause of action, there are no facts alleged which, as a matter of law, would excuse the vendor's obligation to perform his promise. Neither are there facts alleged which suggest that any bona fide dispute existed between the parties which could afford a basis for a settlement or accord and satisfaction. As pleaded, the vendor merely made a bold-faced, unlawful demand for money in excess of the contract price. The demand was a patent violation of the vendor's contract.

The majority opinion states that the appellant "obtained more" in the deed than could have been obtained in the specific performance action. In accepting the conveyance on February 18, 1957, the purchaser received nothing that he was not already entitled to receive from the vendor. Necessarily, therefore, the payment of $7,000 to the vendor was legally without consideration. Thus analyzed, the petition presents a situation of a purchaser who is faced with an unlawful refusal to perform unless an unlawful demand is satisfied; who not only needs the particular land, but cannot in the circumstances obtain any reasonable substitute; who faces a substantial direct financial loss and an immeasurable indirect loss as a result of a shutdown of production; who acceded to the demand; and now seeks restitution of the payment by an action in quasi-contract based on unjust enrichment.

Appellant's legal theory is, essentially, that restitution on the ground of duress should be given for a benefit obtained by an unlawful refusal to perform a valid non-excused contract obligation where the breach will result in substantial economic loss, which loss cannot reasonably be avoided by utilizing the legal remedies available.

With respect to the concept of duress, Judge Middleton, in

*Tallmadge, Exr.,* v. *Robinson* (1952), 158 Ohio St., 333, stated at page 339:

"It is not possible within reasonable limits to exhaustively discuss the development of the law of duress and to analyze the innumerable decisions of courts which treat of the defense of duress. Modern authorities on the subject agree that the legal conception of duress has undergone a radical change since the early period of operation of American courts."

The modern developments and trends are reviewed in: 5 Williston on Contracts (Rev. Ed.), Chap. XLVII, especially Sections 1618 and 1620; Dawson, Economic Duress (1947), 45 Michigan Law Review, 253; Dawson,. Duress Through Civil Litigation (1947), 45 Michigan Law Review, 571, continued at 679; Dalzell, Duress by Economic Pressure (1942), 20 North Carolina Law Review, 237.

The law in the field can only be described as being in a state of flux. It cannot be said that the broad theory suggested above has been generally recognized, but in reviewing the subject, it is apparent that with respect to certain types of contracts, it has been widely applied. One area in which substantial acceptance has long existed is that involved here—a refusal to convey real property interests. In such cases, the law has traditionally recognized that land is, or can be, a unique thing for which there is no suitable substitute. It is apparent that the damage remedy is not adequate. Specific performance will afford no effective remedy if the time delay in obtaining it causes a sufficient enough loss, or, a fortiori, where it is not available at all. The latter is obviously true whenever, as here, the vendor does not own or have a legal right to obtain the interest needed. Among the cases holding that duress existed under such circumstances, see: *Leeper* v. *Beltrami* (1959), 53 Cal. (2d), 195, 1 Cal. Rptr., 12, 347 P. (2d), 12, mortgagor, although mortgage already paid off, paid additional amount demanded because of need to clear title and complete a sale; *Pemberton* v. *Williams* (1877), 87 Ill., 15, refusal by vendor to perform unless demand met, purchaser having in meantime resold; *Joannin* v. *Ogilvie* (1892), 49 Minn., 564, 52 N. W., 217, owner, needing money from sale of property, paid unfounded mechanic's lien to clear title; *Hochman* v. *Zigler's, Inc.* (1946), 139 N. J. Eq., 139, 50 A. (2d), 97, refusal to execute promised lease necessary for sale of lessee's business

14

unless money paid; *Van Dyke, Trustee,* v. *Wood* (1901), 60 App. Div., 208, 70 N. Y. Supp., 324, wife, having already been paid for dower interest, refused a release unless additional land conveyed to her; *Smelo* v. *Girard Trust Co.* (1946), 158 Pa. Super., 473, 45 A. (2d), 264, vendor refused performance unless extra money paid, purchaser having made commitments for construction on the land; *Johnson* v. *Ford* (1922), 147 Tenn., 63, 245 S. W., 531, vendor refused performance unless new "contract" for higher amount, purchaser having obligated himself on project for a manufacturing plant. See, also: *Rowland* v. *Watson* (1906), 4 Cal. App., 476, 88 P., 495; *Wake Development Co.* v. *O'Leary* (1931), 118 Cal. App., 131, 4 P. (2d), 802; *Reed* v. *Boagni* (La. 1932), 142 So., 171; *Wells* v. *Adams* (1901), 88 Mo. App., 215; *Fout* v. *Giraldin* (1895), 64 Mo. App., 165; *First National Bank of David City* v. *Sargeant* (1902), 65 Neb., 594, 91 N. W., 595; *Sunset Copper Co.* v. *Black* (1921), 115 Wash., 132, 196 P., 640; *Guetzkow Bros. Co.* v. *Breese* (1897), 96 Wis., 591, 72 N. W., 45. Among the cases not involving land, see in particular: *Pittsburgh Steel Co.* v. *Hollingshead* (1916), 202 Ill. App., 177; *Brown* v. *Worthington* (1912), 162 Mo. App., 508, 142 S. W., 1082; *Niedermeyer* v. *University of Missouri* (1895), 61 Mo. App., 654; *Hazelhurst Oil Mill & Fertilizer Co.* v. *United States* (1930), 42 F. (2d), 331; *Lonergan* v. *Buford* (1893), 148 U. S., 581.

There are, of course, cases involving substantial financial loss resulting from a refusal to perform in which recovery has been denied for payments made to induce performance. In reviewing those cases, it should be noted that those which involve a bona fide dispute between the parties are distinguishable. If the facts show, or the court has assumed, that such a dispute existed, the refusal to perform is not necessarily wrongful. Perhaps more importantly, the plaintiff there is attempting to use the concept of duress to upset an otherwise valid release or settlement. The law is, and should be, slow to cancel a settlement of a valid dispute, in the absence of convincing proof of illegal or inequitable conduct. These factors are not present under the facts pleaded in the instant case. While there are authorities which cannot be reconciled with the cases cited, those cases represent the better view, and accord with the general posi-

tion on duress indicated by the Supreme Court in the *Tallmadge case.*

The remaining question is whether the allegations made bring this petition within the concept of duress. Looking again at the facts, the appellant had a substantial going business concern employing highly skilled personnel. The impending appropriation necessitated the relocation and reconstruction of the foundry and other facilities by acquiring adjacent properties. Unless the relocation could be accomplished before condemnation, a shutdown in production would result. A long delay occurred while the title was cleared. With the appropriation impending shortly, the appellee knowingly breached his contract and demanded almost double the contract price as a condition to performance. Money in the form of damages or an abatement would not give the purchaser that which was needed—a clear title to this particular land. In considering the pressure to which appellant was subjected, it is significant that if the land had not been obtained appellant would have had to shut down production. Damages resulting from lost profits and possible liabilities to customers and suppliers would be virtually impossible to recover, in view of the limitations on contract damages and the evidentiary problem of proof. It might also be remembered that the value of a judgment, if obtained, depends on the ability to collect.

The appellant was faced with a choice of acceding to the demand or suffering a loss grossly greater. As Oliver Wendell Holmes has stated, the existence of a choice does not disprove the existence of duress. *Fairbanks* v. *Snow* (1887), 145 Mass., 153, 13 N. E., 596; *Union Pacific Rd. Co.* v. *Public Service Commission of Missouri* (1918), 248 U. S., 67. The choice of the lesser of two evils is not a freedom of choice. We cannot ignore the fact that the law is an imperfect instrument. Legal rights exist for which, under particular circumstances, our remedies can provide only partial and incomplete protection. The inadequacies of legal remedies may arise from the delay necessary to invoke them, or because the remedy itself cannot accomplish the fulfillment of the right. Where the loss which may result from the effort to legally enforce a right is substantially greater than the loss which results from compliance with a wrongful demand, the will is surely overridden. There is no freedom of

choice; only a choice of evils. To deny recovery, and thereby uphold the extortion, is to deny any effective protection for the contractual rights, and to encourage the breach.

Appellee suggests that a tender back of the dower release should be a condition to restitution of the $7,000. The payment was allegedly demanded by and paid to the vendor. Appellant received from the vendor what he had a contract right to receive. Having received nothing for the $7,000, there is nothing to tender back.

The allegations sufficiently raised an issue of fact of whether the appellant in paying the money was acting with a legal freedom of choice. The demurrer should have been overruled.